*In re* MARRIAGE OF ARLENE WOJCICKI, Petitioner-Appellant, and ROBERT WOJCICKI, Respondent-Appellee.

First District (1st Division)   Nos. 81—0886, 81—0957, 81—1319 cons.

Opinion filed September 27, 1982.

Melvyn H. Berks, of Berks & Marcus, Ltd., of Des Plaines, for appellant.

Philip S. Lieb, of Kirsh & Berman, Ltd., of Chicago (J. Scott Bonner, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Petitioner, Arlene Wojcicki, filed a petition for dissolution of her marriage to respondent, Robert Wojcicki. Grounds for dissolution were proved up without contest. After a full hearing, the trial court determined the property rights of the parties in various items of personalty, realty and cash, barred both parties from receiving maintenance and held the parties responsible for their own attorney fees. Petitioner appeals from the court's findings and orders with respect to all of the above, exclusive of the grounds for dissolution.

Robert and Arlene Wojcicki were married in August of 1975 and resided as husband and wife until August of 1979, at which time petitioner vacated the marital home. No children were born to the marriage. It was the second marriage for both of the parties, and each entered into it with substantial property.

Respondent was the sole owner of a residence in Schaumburg, Illinois, in which the parties resided during their marriage. Principal due on the then existing mortgage had been reduced to under $2,500. The stipulated value as of November 1978 of said residence was $123,000. Respondent also owned 120 acres of real estate in the Wisconsin Dells upon which he had constructed a shell of a residence, and an additional 20 acres which was divided into four lots, all of which were vacant in 1975. Shortly after the parties' marriage, respondent transferred title to the above properties into joint tenancy with petitioner. In addition, respondent entered the marriage with over $10,000 in savings, which was deposited in the parties' joint account.

Petitioner owned free and clear a residence in Des Plaines, Illinois, valued at approximately $69,000 and various items of personal property.

During the pendency of the marriage, certain improvements were made to the real estate and the parties' assets were augmented by both sales and rental income. Specifically, a garage was constructed on the 120 acres of Wisconsin property, financed in part with funds from the parties' joint bank account and mortgaged in part. The 20-acre tract of Wisconsin property was sold as four lots in 1977 for cash and on contract. Petitioner received rental income of $395 per month from her Des Plaines residence up until 1977, when said residence was sold, realizing $65,000 after expenses.

Apart from $5,000 which petitioner used to repay a personal loan, it is undisputed that all monies received from the above properties

were placed in one or another of the parties' joint bank accounts, as were salary checks of both parties. Similarly, all taxes and mortgage payments on the properties were paid from a joint account.

Other property acquired during the marriage included $18,500 which petitioner had received as settlement for a personal injury claim, a truck and van purchased for use in respondent's business and a $2,821 tax refund. Each party also owned a pension fund of approximately equal value. In addition, petitioner purchased a 1980 Plymouth automobile during the pendency of the dissolution proceedings.

After a full hearing, the trial court made specific findings and ordered the following distribution of property, to which petitioner objects: The court found the Schaumburg residence and the Wisconsin properties to be nonmarital, awarding same to respondent. The proceeds from the sale of petitioner's residence were also held nonmarital and awarded exclusively to petitioner. The parties each received their interests in their respective pension funds, which were marital property to the extent of contributions made during the marriage. Both the van and the truck (having over 90,000 miles and being of uncertain value) were found to be marital and awarded to respondent. Petitioner was awarded the Plymouth automobile, valued at $5,000, to be credited against her interest in the parties' marital property. Remaining marital property included the tax refund, which had previously been applied to cover respondent's prospective liability, and the proceeds from the personal injury settlement. Petitioner was awarded the $69,000 to $70,000 which had been in her constructive possession at the time of hearing (these funds representing the remaining proceeds from the sale of her home and the personal injury settlement) and an additional $5,000 to be paid by respondent in monthly installments without interest.

■ Petitioner first argues that the classifying of the Schaumburg and Wisconsin properties as nonmarital and awarding same to respondent was improper, and relies on the theory of transmutation set forth in the recent case of *In re Marriage of Smith* (1981), 86 Ill. 2d 518, 427 N.E.2d 1239. While the court in *Smith* did recognize a "legislative preference" for classifying property as marital under the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq.*), it also recognized the legislative intent to preserve the character of nonmarital property where the actions of the parties have not created ambiguity in that regard. (86 Ill. 2d 518, 530.) The *Smith* court held that where, as here, a spouse owning separate nonmarital property performs the affirmative act of either transferring title into a form of joint ownership or augmenting the

nonmarital property by commingling it with marital property, such act creates the "rebuttable presumption" of that party's intention to change the character of the property to marital. Thus, transmutation is not absolute and nonmarital property may still retain its character despite a contribution of marital funds. (86 Ill. 2d 518, 531.) In another recent decision, *In re Marriage of Rogers* (1981), 85 Ill. 2d 217, 422 N.E.2d 635, the court clearly stated that the Illinois Marriage and Dissolution of Marriage Act does not purport to change the law regarding interspousal transfers of property owned individually, nor does the Act indicate any dissatisfaction with prior cases in which the intention of a spouse conveying property was ascertained. (85 Ill. 2d 217, 223.) In dissolution proceedings, where the subject matter is property acquired prior to the marriage, the controlling presumption will be the common law presumption of gift which the "donor" spouse may rebut with "clear, convincing and unmistakable evidence." *In re Marriage of Severns* (1981), 93 Ill. App. 3d 122, 126, 416 N.E.2d 1235.

In the instant case, the trial court heard conflicting testimony with regard to respondent's intentions at the time he transferred the property into joint tenancy and found respondent's testimony to be the more credible. Respondent had emigrated from Poland and had limited education. His first wife died after a lengthy marriage, and he testified that he had encountered difficulties succeeding to title in the Schaumburg and Wisconsin properties upon her death. His motivation at the time of transferring title, and that which he conveyed to the attorneys preparing the documents, was to insulate himself and petitioner from similar difficulties in the event of the death of one or the other.

In contrast, petitioner denied respondent's stated intent, although she admitted that respondent had indicated the same to the attorneys involved. It was, and still is, petitioner's contention that respondent intended to convey a present interest in the properties to her by transferring title. Interestingly, petitioner does not assert a similar intent on her part when she commingled the proceeds from the sale of her residence in joint marital accounts, nor does she contest the trial court's finding that said proceeds were her sole nonmarital property.

■ It is the trial court's function to resolve conflicting testimony by assessing the credibility of witnesses and the weight to be accorded their testimony, and the court's findings will not be disturbed unless against the manifest weight of the evidence. (*Stallings v. Stallings* (1979), 75 Ill. App. 3d 96, 100, 393 N.E.2d 1065.) Given the fact that the parties here were the only witnesses to testify, the trial

court's determination as to credibility was central to its adjudication of the issue. The record is replete with instances of evasive and inconsistent testimony by petitioner; the trial court, and even petitioner's own attorney, were forced to admonish her for being unresponsive. Under the circumstances, we do not find the court's decision to accept respondent's testimony over that of petitioner an abuse of discretion.

In addition to the parties' testimony, several factors have been deemed significant where a spouse who has paid the purchase price for property seeks to overcome the common law presumption of a gift. Among those factors are the making of improvements, payment of taxes and the mortgage debt, occupancy of the premises as a home and place of business, and the exercise of control and management of the property. *Coates v. Coates* (1978), 64 Ill. App. 3d 914, 917, 381, N.E.2d 1200; *Scanlon v. Scanlon* (1955), 6 Ill. 2d 224, 231, 127 N.E.2d 435.

Not only did respondent here pay the purchase price for the properties in question, but, as the trial court correctly found, his contributions, both in money and physical labor, to the preservation and improvement of the properties far outweighed the contributions to be credited to petitioner during the parties' brief marriage. The record shows that for a period of 21 years prior to the parties' marriage, respondent, along with his first wife and children, made substantial improvements to the Wisconsin property, which included the clearing of approximately 200 trees and stumps in order to open a roadway which respondent later built, the digging of a culvert to carry away drainage, the removal of approximately 1,000 dead trees from the acreage and the planting of over 6,000 trees on the property. Respondent also made habitable a cabin on the property which was subsequently destroyed in a storm. In 1968, at a cost of $8,000 a new foundation and shell of a home were built on the property. During this period respondent paid all real estate taxes and maintenance costs. The only significant improvement to the Wisconsin property during respondent's marriage to petitioner was the construction of a garage, which was financed for the most part with respondent's premarital savings and funds realized from the sale of respondent's other properties. The Schaumburg property was also acquired some 15 years before the parties' marriage and improved with respondent's own funds. The home had served as the primary residence for respondent and his family for more than 11 years prior to his marriage to petitioner. Respondent testified that he exercised exclusive control over said properties during his marriage to petitioner.

■ We note also that in the majority of the cases cited by peti-

tioner in which the gift presumption was not overcome the subject property was acquired *after* the parties' marriage and contributions by the "donee" spouse were significantly greater than in the instant case. (See, *i.e., In re Marriage of Spina* (1939), 372 Ill. 50, 22 N.E.2d 687; *In re Marriage of Kratzer* (1971), 130 Ill. App. 2d 762, 266 N.E.2d 419.) In addition, some of those decisions relied heavily on the fact that, while the subject property had been acquired in (or transferred into) joint tenancy, other nonmarital property was kept separate by the parties, evidencing the gift intent with regard to the commingled assets only. (See *In re Marriage of Rogers* (1981), 85 Ill. 2d 217, 223.) In contrast, the parties here placed all of their property, including the proceeds from the sale of petitioner's house, in joint tenancy. Under these circumstances, we do not find the trial court's holding that no gift was intended was against the manifest weight of the evidence.

Petitioner next contends that the trial court's distribution of marital property was not in "just proportions" as required by statute. (Ill. Rev. Stat. 1977, ch. 40, par. 503(c).) We note that the trial court specifically stated that it considered its award of the Schaumburg and Wisconsin properties to respondent to be equitable in light of the record before it and the criteria of section 503 regardless of whether the properties were classified as marital or nonmarital.

Section 503 authorizes the trial court to divide marital property in "just proportions" after consideration of "all relevant factors" including 10 factors specifically set forth. The statutory factors relevant to our determination in this case include: the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value of the marital and nonmarital property, including the contribution of a spouse as homemaker or to the family unit; the value of the property set apart to each spouse; the duration of the marriage; the relevant economic circumstances of each spouse when the division of property is to become effective; the age, health, station, occupation, amount and source of income, vocational skills, employability, estate, liabilities and needs of each of the parties; whether the apportionment is in lieu of or in addition to maintenance; and the reasonable opportunity of each spouse for future acquisition of capital assets and income.

■ We have carefully reviewed the record and find that the trial court considered each of the foregoing criteria in its property division. The relative economic circumstances of the parties, their age, health, stage, occupation, vocational skills, liabilities and needs were found to be roughly equivalent. At the time of trial, petitioner was 44 years old

and employed as an order clerk. Her net monthly income was $608.50, which was the most she had earned from any job. She was employed during most of the parties' marriage and had been self-supporting prior thereto. Respondent was 52 years old and worked as a self-employed truck driver. According to his testimony, he earned approximately $520 per month net after expenses. While petitioner gave conflicting testimony with respect to respondent's earnings, the trial court chose to accept respondent's testimony and proffered exhibits. In light of the court's previous finding with respect to the parties' credibility, we cannot say that such was an abuse of discretion.

The marriage was short-lived. The parties resided together as husband and wife for four years and judgment of dissolution was entered in March of 1981.

Given these findings, the trial court could properly accord greater weight to the parties' respective contributions to the acquisition, preservation and appreciation of the subject property. The law is clear that an equal distribution is not mandated (*In re Marriage of Hyland* (1981), 95 Ill. App. 3d 31, 34-35, 419 N.E.2d 662; *In re Marriage of Miller* (1980), 84 Ill. App. 3d 931, 935, 405 N.E.2d 1099, *appeal denied* (1980), 81 Ill. 2d 593), and the distribution of marital property rests within the sound discretion of the trial court, the standard to be applied being whether the court, in the exercise of that discretion, acted arbitrarily without the employment of conscientious judgment. *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1127, 398 N.E.2d 126.

■ Based on our review of the record and the surrounding circumstances, we affirm the trial court's property distribution. Similarly, we reject petitioner's contentions that the trial court abused its discretion in denying her maintenance and in granting to her the items of personalty contained in respondent's proffered exhibit rather than in petitioner's. We also find no merit in petitioner's claim that the court incorrectly determined the amount due her as a result of temporary orders entered during the dissolution proceedings.

■ Lastly, petitioner contends that the court improperly denied her request for attorney fees. Section 508 of the Act provides that the court may order either spouse to pay attorney fees incurred by the other spouse after it considers the financial resources of the parties. (Ill. Rev. Stat. 1977, ch. 40, par. 508.) In the present case, the parties' earnings were substantially equal. Petitioner received a substantial cash award, while respondent was left with relatively no liquid assets and was, in fact, required to pay petitioner the sum of $5,000 in monthly installments of $300 each. We agree with the court's specific

finding that petitioner had not shown an inability to pay her own attorney fees.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

On June 22, 1982, this court stayed the judgment order insofar as it requires petitioner to execute a quitclaim deed of her interest in the Wisconsin property to respondent. That stay is hereby dissolved.

Affirmed.

CAMPBELL, P. J., and GOLDBERG, J., concur.