*In re* MARRIAGE OF ROBERT F. WESTCOTT, Petitioner-Appellee, and PEGGY A. WESTCOTT, Respondent-Appellant (Belmont National Bank of Chicago *et al.*, Defendants).

First District (1st Division)   No. 84—1701

Opinion filed November 2, 1987.

Solomon Frydman, of Chicago, for appellant.

Roger A. Rubin, Ronald S. Ladden, and Mary F. Stafford, all of Epton, Mullin & Druth, Ltd., of Chicago, for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Respondent, Peggy A. Westcott, appeals from the trial court's entry of a supplemental judgment distributing marital assets incident to the dissolution of her marriage with petitioner, Robert F. Westcott. On appeal, respondent contends that the trial court erred in: (1) its disposition of the marital assets; (2) finding that respondent had dissipated martial assets; (3) failing to observe proper trial procedure; (4) being biased and predisposed against respondent; and (5) ordering respondent to pay all of the attorney fees. We affirm in part and reverse in part.

The parties were married on September 17, 1977. At that time, petitioner was 54 and respondent 35 years old. They both had been married before, respondent three times and petitioner once. Both had children from their previous marriages, but none were born as a result of their marriage. At the time the dissolution proceedings began, all of their children, except for respondent's minor son, had reached majority and were emancipated.

When they were married in 1977, petitioner was the sole owner of Westcott Associates, Inc. (Westcott), which he had incorporated in

1967, and respondent was the executive vice-president of Leopold and Company, a consulting firm. On April 7, 1979, petitioner made respondent the executive vice-president, secretary and a director of Westcott. She was authorized to sign checks and she did some accounting for the corporation. During the four-year marriage, the parties acquired various properties, including the marital home, and opened various joint bank accounts.

On September 16, 1981, petitioner filed a petition for dissolution of marriage. Two days later, on September 18, 1981, respondent filed a counterpetition for dissolution. The cases were consolidated on September 24, 1981. A trial of grounds was held on April 26, 1982, after which the court ordered a judgment of dissolution and set the matter for trial on the contested issues.

The trial began on April 26, 1982, and the court made its findings approximately 7½ months later, on December 10, 1982. The fee petitions were heard at a later date.

At the outset of the dissolution proceedings, both parties obtained temporary restraining orders restraining each party from dissipating items of marital property. During the course of the trial, petitioner continued discovering assets which respondent allegedly was hiding. He accused her of violating the injunction and of dissipating assets. She accused him of doing the same.

During the proceedings, many of the marital properties went into foreclosure for failure to pay the mortgages. In addition, both petitioner and respondent were unemployed and receiving unemployment compensation.

On January 17, 1983, the trial court entered its written order containing the following valuation and distribution of property:

| Nonmarital Property | Petitioner | Respondent |
|---|---|---|
| Mutual Fund | $ 18,000.00 | |
| Municipal Bonds | 15,000.00 | |
| Total | 33,000.00 | -0- |
| Marital Property | | |
| Marital Residence | $131,650.00 | |
| Westcott Associates, Inc. | -0- | |
| Westcott profit sharing trust | 28,000.00 | |
| Westcott pension trust | 162,000.00 | |
| Unit No. 4328 at Marina City | 47,698.38 | |
| Unit No. 4805 at Marina City | | $ 45,000.00 |

| | | |
|---|---|---|
| Units No. 1227-1229 at Lake Terrace | 28,440.25 | |
| Unit No. 827 at Lake Terrace | 5,860.33 | |
| Unit No. 429 at Lake Terrace | 6,738.14 | |
| Unit No. 910 at Lake Terrace | | 7,706.68 |
| Unit No. 2706 at 535 N. Michigan Avenue | | -0- |
| Westcott Bank Accounts | 200.00 | |
| United of America Bank Account | | 415.82 |
| Bank of Ravenswood Account | | 311.00 |
| Dime Savings Bank of New York Account | | 1,067.00* |
| Scudder Mutual Funds | | -0- |
| Merrill Lynch Ready Asset | | -0- |
| Uptown Federal Savings & Loan C.D. | | 10,000.00 |
| Stein, Roe & Farnham I.R.A. | | 3,500.00* |
| 1982 Mercedes | | 6,800.00 |
| Dissipation of assets | | 225,000.00 |
| Total | $410,587.10 | $299,800.50 |

*The precise values of these assets were not stated by the court in its supplemental judgment, but were itemized by both parties in their briefs as the values stated.

| Liabilities | | |
|---|---|---|
| Lease in Prudential Building for Westcott offices | $ 12,000.00 | |
| Harris Bank loan | . | $ 17,738.90 |
| Harris Bank overdraft | | 10,500.00 |
| Total | $ 12,000.00 | $ 28,238.90 |
| Net award | $398,587.10** | $271,561.60 |

**This value is actually lower than that stated because petitioner was responsible for all other joint marital debt, figures which the trial court did not specifically state.

In addition, the court ordered respondent to pay her own attorney fees as well as those of the petitioner and the guardian *ad litem.*

Respondent first contends that the trial court abused its discretion in apportioning the marital assets because it failed to follow the guidelines set forth in the Illinois Marriage and Dissolution of Mar-

riage Act (the Act). (Ill. Rev. Stat. 1985, ch. 40, par. 503(d).) She alleges that the court, in dividing the marital property, considered its previous findings of marital misconduct against her, which the Act specifically proscribes a court from doing in its final disposition. We disagree.

Section 503(d) of the Act lists 11 factors which a court must consider in distributing assets (Ill. Rev. Stat. 1985, ch. 40, par. 503(d)), the most pertinent of which, for purposes of this appeal include:

"(1) the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property, ***;

(2) the value of the property set apart to each spouse;

(3) the duration of the marriage;

(4) the relevant economic circumstances of each spouse when the division of property is to become effective, ***;

(5) any obligations and rights arising from a prior marriage of either party;
***

(7) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties;
* * *

(10) the reasonable opportunity of each spouse for future acquisition of capital assets and income; and

(11) the tax consequences of the property division upon the respective economic circumstances of the parties." Ill. Rev. Stat. 1985, ch. 40, par. 503(d).

■ The division of marital property lies within the sound discretion of the trial court, and absent an abuse of that discretion its decision will not be disturbed on review. (*In re Marriage of Wojcicki* (1982), 109 Ill. App. 3d 569, 576, 440 N.E.2d 1028, *appeal denied* (1983), 92 Ill. 2d 579.) Such discretion is abused when a court acts arbitrarily, without the employment of conscientious judgment (*Wojcicki,* 109 Ill. App. 3d 569, 440 N.E.2d 1028), and when no reasonable person could agree with the result adopted by the trial court. *In re Marriage of Kaplan* (1986), 149 Ill. App. 3d 23, 31, 500 N.E.2d 612.

■ Furthermore, distribution of property must be made in "just proportions" after considering "all relevant factors," without regard to fault. (*In re Marriage of Wojcicki* (1982), 109 Ill. App. 3d 569, 575, 440 N.E.2d 1028, *appeal denied* (1983), 92 Ill. 2d 579; Ill. Rev. Stat. 1985, ch. 40, par. 503(d).) However, such distribution need not be equal, merely equitable. *In re Marriage of Weinberg* (1984), 125 Ill.

App. 3d 904, 913, 466 N.E.2d 925, *appeal denied* (1984), 101 Ill. 2d 578.

In the case at bar, the court's thorough findings and ultimate distribution of property were based on proper factors. In reaching its decision, the court relied on the appropriate statutory factors and ignored any prior misconduct of either party during the trial. The court stated that: it based its conclusions solely on what would be an equitable distribution in light of the statutory standards, and not on factors such as grounds fault, contempt sanctions or previous misconduct of either party; respondent had lied with respect to most, if not all, of her testimony; her testimony was proven to be inconsistent and irreconcilable with what the court found to be the truth; when a conflict existed as between petitioner's and respondent's testimony, petitioner's testimony was more credible and believable; petitioner brought into the marriage a thriving business which was able to support both parties; respondent made no substantial contribution to the marriage, bringing into it less than $40,000; respondent diverted approximately $100,000 of Westcott for her own benefit; the expenses reported by respondent to Westcott were grossly exaggerated and falsely asserted; she made numerous unauthorized expenditures in Westcott's name and diverted approximately $80,000 for her own use and benefit; the marriage was of short duration, only four years; respondent, who was in her forties, had a great potential for obtaining future substantial earnings and had the opportunity to thrive and develop in the future; petitioner, who was in his sixties, had poor credit, was in debt, and was unlikely to be able to start up his business again and to develop it financially before he retired; there were substantial future tax liabilities; and respondent had dissipated $225,000 throughout the marriage and after the injunction had been issued.

Based on our review of the record and the trial court's thorough findings, we find no abuse of discretion in the trial court's apportionment of the marital assets.

Respondent contends, however, that the trial court improperly found that she had dissipated $225,000 in assets.

Dissipation is found where one spouse uses marital property for his or her own benefit and for a purpose unrelated to the marriage at a time the marriage is undergoing an irreconcilable breakdown. (*In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 462, 426 N.E.2d 1087.) Whether a course of conduct constitutes dissipation depends upon the facts of each case. (*In re Marriage of Kaplan* (1986), 149 Ill. App. 3d 23, 32, 500 N.E.2d 612.) In addition, it is the function of the trial court to resolve conflicting testimony by

assessing the credibility of the witnesses and the weight to be given to their testimony. Where the husband and wife are the primary witnesses, the court's credibility determination is central to the adjudication. (See *In re Marriage of Wojcicki* (1982), 109 Ill. App. 3d 569, 573-74, 440 N.E.2d 1028, *appeal denied* (1983), 92 Ill. 2d 579.) Furthermore, the party who is charged with dissipation is under an obligation to establish by clear and specific evidence how those funds were spent. General and vague statements that they were spent on marital expenses or that they were used to pay bills are inadequate to avoid a finding of dissipation. *In re Marriage of Smith* (1984), 128 Ill. App. 3d 1017, 1022, 471 N.E.2d 1008.

■ In the case at bar, the trial court determined that respondent had dissipated $225,000 in assets by: hiding assets, thus wasting assets by requiring time and money to be spent finding them; allowing encumbrances to be placed unnecessarily on marital assets; misleading her marital partner; spending sums of money for unnecessary purposes such as bodyguards, couriers and investigators; falsifying facts, thus requiring extensive investigation and documentation by petitioner to uncover those falsifications; failing to defend certain lawsuits; making several trips to Brooklyn for the purpose of hiding assets; falsifying and altering documents, misleading petitioner as to the true state of Westcott's finances, and causing petitioner and respondent to make overdrafts, thus leading to the ultimate decline of Westcott and destruction of petitioner's credit rating; opening various accounts at various banks in fictitious names for the purpose of concealing the true status of her financial affairs from petitioner and the Internal Revenue Service; purchasing a luxury vehicle, a 1982 Mercedes, while unemployed; using her fiduciary relationship to manipulate Westcott for her own benefit, and stealing from that company; failing to account for money she received for rentals on the parties' real estate; issuing useless subpoenas; and allowing a tenant to encumber a lease.

While we give great weight to the credibility determination of the trial court in its finding that petitioner was being candid with the court and that respondent continuously lied, nevertheless, we find that the court improperly found that respondent had dissipated the amount of $225,000. We have carefully reviewed the record and have determined that not all of respondent's spending was done at a time that the marriage was irreconcilably breaking down, nor was it done solely for her own benefit. Many of the Westcott checks with respondent's signature from early on in the parties' marriage were used to pay for household items or entertainment expenses for the mutual

benefit of both parties and to support the lifestyle that both of them enjoyed. See *In re Marriage of Malters* (1985), 133 Ill. App. 3d 168, 181-82, 478 N.E.2d 1068.

Therefore, we find that the amount respondent should be charged with dissipating should be reduced by $100,000. As for the other $125,000, there existed ample evidence in the record that respondent dissipated that amount. The trial court did not believe most, if not all, of respondent's explanations as to how those funds were spent. Respondent failed to provide the court with clear and specific evidence as to how they were spent. Her vague statements that the funds were spent on marital expenses and to pay bills were insufficient to avoid a finding of dissipation.

In addition, even though we have reduced the amount respondent dissipated, we still find that the court's division of property was equitable in light of its findings in accordance with the standards set forth in the Act. Ill. Rev. Stat. 1985, ch. 40, par. 503(d).

■■■ Respondent asserts, however, that in finding the dissipation the court improperly relied on certain of petitioner's exhibits which were an accountant's summary of various documents. She argues that such summaries should not have been admitted into evidence. We disagree.

When original documents are voluminous and cannot conveniently be examined to extract the fact to be proved, as in the instant case, then any competent witness who has seen the originals, petitioner's accountant in the present case, may testify to the fact, provided it is capable of being determined by calculation. In addition, the documents summarized must be available in court, as they were in the case at bar, or made available to the opponent. (See *In re Marriage of Kaplan* (1986), 149 Ill. App. 3d 23, 30, 500 N.E.2d 612.) Consequently, the summaries were properly admitted.

Next, respondent contends that the court failed to observe proper trial procedures by the following: (1) during Ronald Ladden's (one of petitioner's attorneys) adverse direct examination of respondent, the court ordered respondent to empty the contents of her purse and allowed Ladden's request to rummage through her things. He found two keys which looked like safety deposit box keys, and the court permitted him to confiscate them. The court also allowed Ladden to inspect other bags in the courtroom over objection by respondent's counsel that the bags contained work product; (2) the court allowed Ladden to make an *ex parte* report of what he found with respect to the keys found in respondent's purse; (3) at one point in the proceedings, the court ordered respondent out of her home on several days

notice, then stayed the order, then lifted the stay and gave petitioner possession of the home without allowing respondent to remove her belongings; and (4) the court allowed petitioner to reopen his case months after he apparently had rested, and in effect, allowed petitioner continuing discovery.

■■ From our review of the record, we find that the trial court observed proper trial procedure. First, during Ladden's adverse examination of respondent, he requested the court to order her to remove two keys from her purse that he suspected were safety deposit box keys. The court granted his "motion to produce the contents of her purse," and ordered her to give Ladden the two keys. In addition, Ladden requested the court to allow him to look through respondent's bags in order to find if she was hiding anything else. The court was going to allow Ladden to do so, but stated that if the bags contained only work product or papers for the case, the court would "let it go." The proceedings continued without any search of respondent's bags. Thus, no improper search was conducted.

Next, respondent's allegation that the court engaged in an *ex parte* proceeding with Ladden is without merit. The transcript of the proceedings held on November 11, 1982, shows the following. Only Ladden was present in court; however, Ladden had given telephone notice to Stuart Litwin and Alan Rugendorf (respondent's attorneys). In fact, Litwin was present in court just before the Westcott case was to be heard, but he had to be elsewhere and could not wait, so he left. Litwin told Ladden that he could represent to the court that the parties agreed that Ladden could file a third amended petition for dissolution, adding five banks as parties. Rugendorf could not attend because he was in a deposition.

■■ During the proceedings on November 11, Ladden informed the court that he discovered that both keys he had previously obtained from respondent in court were safety deposit box keys, contrary to her assertions that one key opened a safe in her son's dormitory room at school. Ladden had discovered that one key belonged to a safety deposit box at the Dime Bank in New York, and the other belonged to a box at one of five banks in Chicago. For this reason Ladden filed his third amended petition adding the banks. No error was committed.

Further, as respondent alleges, the court did order her out of her apartment without permitting her to remove her belongings; however, she had notice that the court might so order. The court previously had taken under advisement a motion to lift the stay which had allowed respondent to remain in the apartment. At the hearing on the motion,

the court stated that the parties knew that the court might rule either way and that respondent should have prepared for the possibility that the stay would be lifted.

The court then ordered respondent out of the apartment immediately, but provided that she could receive her and her son's clothing and necessities through petitioner. The court informed counsel that they were to agree as to the method. The court absolutely prohibited respondent from entering the apartment, but provided that Litwin or someone from his office could help pack and pick up her belongings and her car, which was parked in the building's garage. In denying respondent access to the apartment, the court stated:

"No, I'm not going to allow her to be there, because the experience was the last time the attorneys as well as a deputy sheriff were given directions other than what I had anticipated, and required, and I will not tolerate or allow that to happen again. She will not be allowed in the apartment."

■ Respondent's final allegation that the court allowed petitioner to "re-open" his case months after he had rested is also without merit. The court merely allowed petitioner to continue to discover assets which respondent had hidden and which were not previously available to him.

Next, respondent contends that the following shows the trial court's bias and predisposition against her: On September 29 and 30, 1982, the court held her in contempt. Thereafter, the court referred to respondent's lack of credibility, the court's belief that she had dissipated assets, her lies, obstruction of justice and contemptuous behavior.

■ We do not find any bias or predisposition against respondent displayed by the trial court. Respondent admits that prior to September of 1982 the court showed no bias against her. It was only after five months of trial that the court became angry with her actions throughout the trial. The court's statements concerning respondent's lack of credibility and her lies were based on the court's own perceptions and judgment. The court merely believed petitioner's testimony over respondent's. It is not this court's function to review those credibility determinations. See *In re Marriage of Wojcicki* (1982), 109 Ill. App. 3d 569, 573-74, 440 N.E.2d 1028, *appeal denied* (1983), 92 Ill. 2d 579.

Finally, respondent contends that the trial court improperly ordered her to pay all attorney fees and that those fees were excessive.

■ Section 508 of the Act authorizes the court, "after considering the financial resources of the parties," to order one spouse to pay

all or part of the other spouse's reasonable attorney fees. (Ill. Rev. Stat. 1985, ch. 40, par. 508(a)(1).) Such an award "is justified only where the party seeking the award has demonstrated his or her own inability to pay and the financial ability of the other spouse to do so." (*In re Marriage of Sevon* (1983), 117 Ill. App. 3d 313, 319, 453 N.E.2d 866.) Allowance of fees is within the sound discretion of the trial court, and a fee award will not be reversed on appeal unless an abuse of discretion is shown. *Sevon*, 117 Ill. App. 3d 313, 453 N.E.2d 866.

In the case at bar, the court ordered respondent to pay the following fees: (1) to Alan Rugendorf, respondent's attorney, $37,000, of which she had already paid $6,700, thus owing $30,300; (2) to Allen Berman, the court-appointed guardian *ad litem* for respondent's minor child, $20,834, of which respondent had already paid $2,234, thus owing $18,600; and (3) to Bernard Hammer, petitioner's attorney, $13,000 of his $18,000 in fees.

We find that the trial court abused its discretion in ordering respondent to pay Hammer's fees. The record fails to show that she has the ability to pay those fees and that petitioner does not. Therefore, we reverse that part of the trial court's order and order petitioner to pay all of his own fees.

We affirm the remaining portion of the trial court's order which ordered respondent to pay Rugendorf's and Berman's fees. First, the trial court found that respondent's actions made necessary the large fees. (See *In re Marriage of Cook* (1983), 117 Ill. App. 3d 844, 854-55, 453 N.E.2d 1357.) Second, respondent brought Berman into the case to represent her minor son's interests in the assets at issue; however, her son had no such interests. Finally, the trial court found that respondent, in her forties, had a greater potential for obtaining future substantial earnings than petitioner, who was 65. See *In re Marriage of Siegel* (1984), 123 Ill. App. 3d 710, 722-23, 463 N.E.2d 773.

Accordingly, the award of attorney fees to Bernard Hammer, ordering respondent to pay them, is reversed and the amount respondent is charged with dissipating is modified by reducing it to $125,000. In all other respects the judgment is affirmed.

Reversed in part; modified in part and, as modified, affirmed.

QUINLAN, P.J., and MANNING, J., concur.