2023 IL App (1st) 192253

No. 1-19-2253 cons 1-21-0964

Opinion Filed on March 31, 2023

Sixth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF LAURA KLOSE, | ) | Appeal from the Circuit Court of |
| | ) | Cook County, Illinois. |
| Petitioner-Appellee, | ) | |
| | ) | No. 14-D-4796 |
| and | ) | |
| FREDRICK KLOSE | ) | The Honorable |
| | ) | Michael Forti |
| Respondent-Appellant. | ) | Judge Presiding. |
| | ) | |

_____

JUSTICE C.A. WALKER delivered the judgment of the court, with opinion.
Presiding Justice Mikva and Justice Oden Johnson concurred in the judgment, and opinion.

**OPINION**

¶ 1 Laura Klose filed a petition for dissolution of marriage from Fredrick Klose. After six days of trial testimony, the circuit court entered an order dissolving the marriage and awarded each party 50% of the marital estate. Fredrick appealed. During the pendency of the appeal, Laura filed a motion to clarify the judgment, or in the alternative, petition for adjudication of indirect civil contempt. The circuit court granted the motion to clarify the judgment and ordered that "Laura shall receive an additional (over Fredrick) $222,045.76 from the marital estate, or $111,022.88 from Fredrick's share of the assets to account for the pre-distributions taken by Fredrick during

the pendency of this divorce case." The court denied Fredrick's motion to reconsider, and Fredrick filed an additional notice of appeal. The appeals were consolidated.

¶ 2    Fredrick now argues that the circuit court (1) abused its discretion by finding that the three investment accounts and former marital residence were marital property, (2) erred by dividing the accounts and property equally, and (3) erred by modifying the judgment for the dissolution of marriage more than 30 days after the entry of the judgment. We hold the circuit court's finding that the investment accounts and marital residence are marital property was not against the manifest weight of the evidence. The court did not abuse its discretion by awarding each party 50% of the marital estate. We further hold that the circuit court did not err when it ordered that Laura shall receive 50% or $111,022.88 from an investment account where the court clarifies the judgment for dissolution of marriage that provided each party shall receive 50% of the marital estate. For the following reasons, we affirm.

¶ 3                                I. BACKGROUND

¶ 4    Laura and Fredrick married in 1987 and had one child, Christina. Fredrick began working in 1953. Fredrick's Social Security statement shows a total amount of wages of $333,695 prior to marrying Laura. Laura worked prior to marrying Fredrick. However, both parties agreed she would cease working outside of the home so that she could raise Christina. Laura began working again in 1995 until 2014. Laura's W2's demonstrate that she earned $356,100.00 from 1995 to 2012. On May 22, 2014, Laura filed a petition for dissolution of marriage from Fredrick.

¶ 5    At trial, Laura presented an exhibit that demonstrated three separate investment accounts owned by the parties. A Genworth Annuity, established June 8, 2006, contained a balance of $641,816.91 as of June 2017. A John Hancock Annuity, formed on November 2, 2005, contained

an approximate balance of $817,251.50 as of September 2017. Lastly, a Scudder Destinations IRA, established on April 3, 2001, had a balance of $92,621.50.

¶ 6    Prior to the marriage, Fredrick purchased a house in Park Ridge, Illinois. That Park Ridge property would later serve as the marital residence for Fredrick and Laura. In June of 1999, the parties retained the legal services of John E. Owens, who specialized in estate planning. Owens created a land trust for the home and two reciprocal trusts in the parties' names. Owens testified that he explained how the documents worked to the parties:

> "Q. So if I understand your testimony, what we have gone over so far, it was not your understanding that your direction was to equalize the estates now or then for Mr. and Mrs. Klose?
>
> A. My understanding was that the land trust was to protect her currently at that time because her estate was much lower in asset value and it is also protected— reflected back on the husband who would, as we established, would have established a tax benefit for him.
>
> As far as going ahead, the estate, the trusts that were reciprocal trusts, were set up to benefit both parties at that time and to benefit Mrs. Klose so that she would be protected should anything happen to Mr. Klose. So there is a benefit there that tends to equalize because it places his assets that are in trust. And I clarify that because in trust means that the assets must be placed into the trust otherwise they are subject to the probate.
>
> ***
>
> Q. You could set up the trust and not make them reciprocal?

A. Yes.

Q. But you chose to because of the tax benefits?

A. Well, not only the tax benefit, for the benefit of the spouses because that's the way they had planned it. If the husband's estate were larger, it would more than benefit and the husband would receive from the wife. So in that case, if he passed away, his assets would ultimately have benefited the wife to a greater extent than they would have to the wife leaving what she had in her name, which is smaller."

¶ 7        Years later, Fredrick contacted Owens and attempted to remove Laura as the beneficiary of the land trust. Owens refused to make any changes to the trust without Laura's consent to modify the trust. At trial, Fredrick claimed that when he signed the documents "he didn't understand all of that stuff." The circuit court found that Fredrick's subsequent meetings with Owens to remove Laura as a beneficiary was evidence that he understood that he gifted the home to Laura.

¶ 8        Fredrick also entered an exhibit reflecting the money he acquired before the marriage. On cross-examination regarding the exhibit, the following exchange occurred:

"Q. That Exhibit No. 33, as we just identified, says on the front of it, blue sheet here, money Fredrick Klose acquired before marriage; yes?

A. That's what it says.

Q. And yet some of the documents that are in that Exhibit 33, are they not, are documents reflecting assets of other individuals other than yourself such as Anna Lutz, Dorothy Kerr, Frederick F. Klose and Alfred Klose? Some of those documents are in their names; correct?

A. I inherited all that stuff.

Q. These documents don't reflect any inheritance, they just reflect assets in their names; correct?

A. Correct."

¶ 9    The circuit court entered a judgment for dissolution of marriage on July 18, 2019. The court ruled that the Park Ridge property and the three investment accounts were marital property and ordered that the marital estate be divided equally. The circuit court denied Frederick's motion to reconsider the division of marital property, and he appealed.

¶ 10    After the judgment was entered, and while the case was on appeal, Laura filed an Amended Motion to Clarify Judgment, or in the Alternative, Petition for Adjudication of Indirect Civil Contempt of Court on April 23, 2020. Laura sought clarification on how the court was treating the $222,045.76 that Fredrick withdrew from their retirement assets during the pendency of the case. In the alternative, Laura sought the adjudication of indirect civil contempt for Fredrick's disregard of the nine court orders requiring him to account for those funds. Fredrick argued that the circuit court lost jurisdiction because the judgment was entered more than 30 days ago. The court granted Laura's motion to clarify and awarded Laura an additional "$222,045.76 from the marital estate, or $111,022.88 from Fredrick's share" to account for the pre-distributions taken by Fredrick during the pendency of the divorce case. The circuit court denied Fredrick's motion to reconsider.

¶ 11    Fredrick now appeals.

¶ 12                              II. JURISDICTION

¶ 13    The circuit court issued an order dissolving the marriage on July 18, 2019, and a final order on the issue on October 23, 2019. An order disposing of petitioner's motion to clarify the

judgment was entered on May 15, 2021, and a final order on the issue was entered on July 19, 2021. Notices of appeal were filed on October 31, 2019 and August 11, 2021. The appeals were consolidated. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. July 1, 2017), governing appeals from final judgments entered below.

¶ 14                                       III. ANALYSIS

¶ 15     On appeal, Fredrick argues that the circuit court (1) abused its discretion by finding that the three investment accounts and former marital residence were marital property, (2) erred by dividing the accounts and property equally, and (3) erred in exercising its jurisdiction to modify the judgment for the dissolution of marriage more than 30 days after the final judgment.

¶ 16                                   A. Marital Property

¶ 17     "The trial court's determination that an asset is nonmarital property will not be disturbed on appeal unless that determination is against the manifest weight of the evidence ***." *In re Marriage of Hegge*, 285 Ill. App. 3d 138, 140 (1996). Under section 503 of the Illinois Marriage and Dissolution of Marriage Act (Act), "marital property" constitutes all property acquired by either spouse subsequent to the marriage, excluding several non-marital property exclusions. 750 ILCS 5/503(a) (West 2020). The "non-marital property" exceptions considered in this case are:

> "(6) property acquired before the marriage, except as it relates to retirement
>
> plans that may have both marital and non-marital characteristics;
>
> ***
>
> (7) the increase in value of non-marital property, irrespective of whether the
>
> increase results from a contribution of marital property, non-marital property, the

personal effort of a spouse, or otherwise, subject to the right of reimbursement provided in subsection (c) of this Section[.]" *Id.*

¶ 18    There is a rebuttable presumption that property acquired after marriage but before the dissolution of marriage is marital property regardless of how the property was held. *Id.* § 503(b)(1). The presumption of marital property is overcome by showing through clear and convincing evidence that the property was acquired by a method listed in subsection (a) of the Act or was done for estate or tax planning purposes or for other reasons that establish that a transfer between spouses was not intended to be a gift. *Id.* "It is the burden of the party claiming that property acquired during the marriage is nonmarital to prove by clear and convincing evidence that the property falls within an enumerated exception." *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 77 (citing *In re Marriage of Didier*, 318 Ill. App. 3d 253, 258 (2000)). "Any doubts as to the nature of the property are resolved in favor of finding that the property is marital." *Hegge*, 285 Ill. App. 3d at 141.

¶ 19    Section 503(c)(2)(A) states:

"When one estate of property makes a contribution to another estate of property, the contributing estate shall be reimbursed from the estate receiving the contribution notwithstanding any transmutation. No such reimbursement shall be made with respect to a contribution that is not traceable by clear and convincing evidence or that was a gift. The court may provide for reimbursement out of the marital property to be divided or by imposing a lien against the non-marital property that received the contribution." 750 ILCS 5/503(c)(2)(A) (West 2020).

¶ 20    There is no dispute between the parties that the Park Ridge property was acquired prior to Laura and Fredrick's marriage. Fredrick argues that he never intended to gift the property to Laura and that the trusts were created solely for estate and tax planning services.

¶ 21    To support this claim, Fredrick cites *In re Marriage of Wojcicki*, 109 Ill. App. 3d 569 (1982). In *Wojcicki*, Robert and Arlene Wojcicki were married for four years before filing for dissolution of marriage. *Id* at 571. Arlene was the sole owner of one property, while Robert was the sole owner of another property that the couple lived in during the marriage. *Id.* Robert also owned acreage in Wisconsin with a garage and shell residence constructed on it. *Id.* Shortly after the parties' marriage, Robert transferred title to the above properties into joint tenancy with Arlene. *Id.* Income from the rental properties, as well as their salaries, went into a marital checking account. *Id.* at 571-72. In the dissolution of marriage judgment, the circuit court found that the Wisconsin land and the property in which they lived during their marriage were not marital property and awarded both to Robert. *Id.* at 572.

¶ 22    Arlene appealed the circuit court's finding that no gift was intended by Robert to transfer title of his residence. This court affirmed, finding that (1) the contributions in money and physical labor were mostly attributable to Robert, (2) the duration of the marriage was short, and (3) with respect to the Wisconsin property, Robert owned and improved the property for 21 years before the marriage. *Id.* at 574. The court also noted the conflicting testimony regarding the transfer of title. The circuit court found Robert's testimony regarding his intentions with the properties more credible, while Arlene testified inconsistently and evasively. This court reasoned that it would not disturb the weight afforded to each testimony unless it was against the manifest weight of evidence. *Id.* at 573-74.

¶ 23    Here, we find the facts distinguishable from *Wojcicki* because the testimony at trial and the land trust governing the Park Ridge property named Laura as a beneficiary. At trial, Owens also explained how the land trust worked in tandem with the reciprocal trusts and naming Laura as a beneficiary benefited Fredrick as well. Owens testified consistently and credibly that he reviewed the documents with Fredrick almost "word for word" and that Fredrick understood that he was gifting the property to Laura. This presumption is supported by the fact that when the marriage began to deteriorate, Fredrick contacted Owens in an attempt to remove Laura as a beneficiary of the trust. Where Fredrick has not presented any evidence that he was forced to sign the estate documents, nor has he presented evidence refuting Owen's testimony that he was aware that he deeded the property to Laura, we find the court's determination that the Park Ridge property was a marital asset was not against the manifest weight of the evidence.

¶ 24    Fredrick also insists that the three investment accounts should not be considered marital property, despite each being created during their marriage. Fredrick claimed that the investment accounts were a culmination of his personal savings since his first job in 1954. Despite his total wages prior to his marriage being $333,695, he claims that the investment accounts, totaling $1,551,689.92, are a result of investments that grew on their own over time. Although Fredrick testified that there is no way to trace the funds to the investment accounts without any commingling of marital earnings. " 'Tracing of funds is a procedure which allows the court to find that property which would otherwise fall within the definition of marital property is actually nonmarital property under one of the statutory exceptions.' " *In re Marriage of Stuhr*, 2016 IL App (1st) 152370, ¶ 52, (quoting *In re Marriage of Jelinek*, 244 Ill. App. 3d 496, 504, (1993), citing *In re Marriage of*

*Scott*, 85 Ill. App. 3d 773, 777 (1980)). "Tracing requires that the source of the funds be identified." *In re Marriage of Davis*, 215 Ill. App. 3d 763, 770 (1991).

¶ 25     Regarding the source of funds in the investment accounts, Fredrick argues that he has testified more credibly than Laura, but Fredrick has not produced sufficient documentary evidence to establish his contribution. If marital and non-marital property are commingled into newly acquired property, resulting in a loss of identity of the contributing estates, the commingled property shall be deemed transmuted to marital property. 750 ILCS 5/503(c)(1)(B) (West 2020).

¶ 26     Fredrick cites *In re Marriage of Henke*, 313 Ill. App. 3d 159, 174 (2000), to argue that "the absence of documentary evidence tracing funds to a non-marital source does not necessarily preclude a party from rebutting the marital property presumption; the testimony offered must be credible." Fredrick's reliance on *Henke* is misplaced. In *Henke*, petitioner Marvin Jr. argued on appeal that the former marital estate was not entitled to reimbursement for funds contributed by the marital estate to non-marital property he received from his parents. *Id.* at 173. The respondent, Adele, did not contest whether the property that benefited from the marital funds was marital or non-marital property. *Id.* at 163. Instead, Adele sought reimbursement for the marital funds used to contribute to the non-marital property. *Id.* at 174.

¶ 27     This court held that the circuit court had properly classified a certain amount of property as marital, where the wife's testimony concerning contributions "was sufficient to trace the contributions of the marital estate to the nonmarital property by clear and convincing evidence." *Id.* at 173-174. Unlike *Henke*, the parties here dispute whether the investment accounts are marital property, an issue not contested by the parties in *Henke*. Also, in *Henke* the circuit court determined Adele's testimony was sufficient to trace the contributions of the marital estate to the non-marital

property by clear and convincing evidence. Here, the circuit court made no such determination about Fredrick's testimony regarding the origin of the funds in the investment accounts.

¶ 28    Despite Fredrick's claim that he testified clear and credibly to account for the contested funds, the record demonstrates the contrary. "Witness credibility and the resolution of conflicts in evidence are matters within the discretion of the trial judge and should not be disturbed upon review." *Moniuszko v. Moniuszko*, 238 Ill. App. 3d 523, 530 (1992). Even uncontradicted testimony, if inherently unreasonable or improbable, need not be believed. *In re Marriage of Pittman*, 212 Ill. App. 3d 99, 103 (1991). During Fredrick's testimony, it was revealed that duplicate bank statements, trusts (where he was not the beneficiary), and loan notes were listed as assets to bolster testimony that he acquired the funds in the investment accounts prior to the marriage. We agree with the circuit court that the admissible documentary evidence and Fredrick's testimony were not enough to satisfy the clear and convincing standard. Fredrick argues that Laura has not produced evidence that she contributed to the investment accounts. However, it is Fredrick's burden to prove that the investment accounts fall within one of the enumerated exceptions for marital property under the Act. As a result, the circuit court's finding that the three investment accounts were marital property was not against the manifest weight of evidence.

¶ 29    Considering the above, Fredrick has failed to satisfy the clear and convincing standard because of his inconsistent testimony and lack of evidence to support his claim that the properties are non-marital property. Hence, the circuit court did not err by determining the Park Ridge property and three investment accounts were marital property.

¶ 30                                    B. Distribution of Property

¶ 31    The Act requires the circuit court to divide marital property in "just proportions," considering all relevant factors. 750 ILCS 5/503(d) (West 2020). Property distribution requires an equitable distribution, not an equal one. *In re Marriage of Foster*, 2014 IL App (1st) 123078, ¶ 103. A circuit court's distribution of marital property will not be reversed, absent a showing that the court abused its discretion. *In re Marriage of Sanfratello*, 393 Ill. App. 3d 641, 648 (2009). "A trial court abuses its discretion only where its ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *In re Adoption of S.G.*, 401 Ill. App. 3d 775, 784 (2010).

¶ 32    Fredrick claims that the circuit court erred by distributing the property equally. The essence of Fredrick's claim is that he had a greater contribution to the marital property than Laura, and as a result, the court erred in dividing the marital property. To support his argument, Fredrick cites *In re Marriage of Abma*, 308 Ill. App. 3d 605, 607 (1999).

¶ 33    In *Abma*, a wife challenged the distribution of marital property where her husband was awarded the marital estate in the dissolution judgment. The wife argued that the court's placement of an economic value on her law degree resulted in the court's erroneous award of the entire equity in the marital residence to the husband. This court upheld the circuit court's judgment, finding that the wife's law degree was a relevant factor in arriving at a fair distribution of the couple's marital assets and liabilities, and the husband was entitled to some form of compensation for supporting the wife while she pursued her degree. *Id.* at 617.

¶ 34    Fredrick asserts that he provided Laura the same support as the wife in *Abma*, so he should be entitled to more of the marital property than Laura. We find *Abma* distinguishable from the

facts here. Notably, the reasoning in *Abma* specifically pertained to student spouses. *Id.* at 616. The court explained that " 'the contributing spouse should be entitled to some form of compensation for the financial efforts and support provided to the student spouse in the expectation that the marital unit would prosper in the future.' " *Id.* (quoting *In re Marriage of Weinstein*, 128 Ill. App. 3d 234, 241 (1984)).

¶ 35     Furthermore, Fredrick ignores the $356,100 that Laura contributed to the marital estate and her contribution by staying at home to raise their daughter. Fredrick claims that Laura has not produced evidence that she contributed to the investment accounts or the maintenance of the marital residence, but ample evidence supported the circuit court's determination of the appropriate division of the marital estate. As the circuit court observed, Laura meaningfully contributed to their household during their 27-year marriage. She devoted most of her time to raising their daughter Christina. At the time of the hearing, Laura was 59 years old, and Fredrick was 82. The circuit court's order reflects that it carefully considered the factors outlined in section 503 of the Act, including the contributions of the parties, in distributing the property. Hence, the circuit court did not abuse its discretion when it divided the marital estate equally.

¶ 36                         C. Jurisdiction to Clarify Judgment

¶ 37     The circuit court granted Laura's motion to clarify the judgment. The motion sought clarification of the intention of the circuit court, relative to its order to equally divide the marital estate. Fredrick asserts that the circuit court erred in exercising jurisdiction to modify the judgment for dissolution of marriage on a motion filed more than 30 days after entry of said judgment. Section 2-1401 provides:

"(a) Relief from final orders and judgments, after 30 days from the entry thereof, may be had upon petition as provided in this Section. ***

* * *

(c) *** the petition must be filed not later than 2 years after the entry of the order or judgment. Time during which the person seeking relief is under legal disability or duress or the ground for relief is fraudulently concealed shall be excluded in computing the period of 2 years." 735 ILCS 5/2-1401 (West 2020).

¶ 38    The standard of review on a 2-1401 petition depends on the manner in which the petition was disposed. *People v. Vincent*, 226 Ill. 2d 1, 9 (2007). If there is a "purely legal challenge" to the underlying judgment, we apply *de novo* review. *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 47. If the challenge is a factual one, as here, the question of whether relief should be granted lies within the sound discretion of the circuit court, and "a reviewing court will reverse the circuit court's ruling on the petition only if it constitutes an abuse of discretion." *Id.* ¶ 37.

¶ 39    Fredrick argues that Laura's petition to clarify was, in fact, a petition to modify the divorce judgment under section 510 of the Act (750 ILCS 5/510 (West 2020)). Furthermore, Fredrick contends that the circuit court did not have jurisdiction because the petition was filed more than 30 days after the entry of judgment. In response, Laura clarified that she filed her petition under section 2-1401 and the circuit court did have jurisdiction to clarify the judgment. Fredrick does not dispute the facts in the petition, but instead argues that the petition was filed under section 510, and the circuit court lacked jurisdiction because it was filed 30 days after the final judgment.

Hence, this issue presents a purely legal challenge. Therefore, we apply *de novo* review. *Walters*, 2015 IL 117783, ¶ 47.

¶ 40    To support his argument, Fredrick directs us to *Waggoner v. Waggoner*, 78 Ill. 2d 50, 54 (1979). In *Waggoner*, the dissolution of marriage judgment provided that the wife would "retain the residence of the parties, the motor vehicle and the furnishings, subject to the indebtedness on said items." (Internal quotation marks omitted.) *Id.* at 51. More than 30 days after the judgment became final, the wife filed a motion requesting that the circuit court order the husband to remove a judgment lien and second mortgage on the residence. *Id.* The circuit court denied the motion, and the fifth district of this court affirmed the circuit court's denial of the wife's motion to clarify, amend, or modify the divorce and settlement decree. Our supreme court affirmed the fifth district's decision, affirming the circuit court's denial of the wife's motion to clarify the divorce decree and property settlement. The supreme court found that the circuit court lacked subject-matter jurisdiction to hear the wife's motion because the motion did not "seek to enforce the terms of the decree, but instead to engraft new obligations onto the decree." *Id.* at 53-54.

¶ 41    Unlike *Waggoner*, the dissolution judgment in this case, provided "Laura and Frederick shall each be awarded 50% of the marital estate which includes: the current balances of the three investment accounts, Genworth, Hancock and the Scudder IRA." Hence, the enforcement Laura sought was already set forth in the dissolution judgment. The circuit court has jurisdiction where a party seeks relief that is contemplated by the dissolution judgment. *In re Marriage of Ulanov*, 2020 IL App (1st) 182501-U, ¶ 29. The court intended that both parties receive 50% of the marital estate. To bring about that intention, and after considering Fredrick's inability to account for the funds he withdrew, the court clarified the judgment by awarding Laura an additional "$222,045.76

- 15 -

from the marital estate, or $111,022.88 from Fredrick's share to account for the pre-distributions taken by Frederick" during the proceedings. Furthermore, Laura's petition to clarify the judgment states that she sought relief pursuant to sections 2-1401 and 511 (750 ILCS 5/511 (West 2020)), not section 510. After a judgment for dissolution of marriage is entered, the circuit court retains jurisdiction for the purpose of enforcing its decrees. *Waggoner*, 78 Ill. 2d at 53. Thus, we hold the circuit court maintained jurisdiction to enter an order requiring Fredrick to provide funds awarded to Laura in the dissolution of marriage judgment.

¶ 42                                IV. CONCLUSION

¶ 43    For the foregoing reasons, the circuit court's finding that the disputed assets were marital property is affirmed. The circuit court did not abuse its discretion when it ordered that the marital property shall be distributed equally between the parties. The circuit court also did not err when it clarified the judgment that provided each party shall receive 50% of the marital estate and ordered that Laura shall receive 50% or $111,022.88 from an investment account.

¶ 44    Affirmed.

---

***In re Marriage of Klose*, 2023 IL App (1st) 192253**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 14-D-4796; the Hon. Michael Forti, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | John C. Vojta, of Palatine, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Lawrence S. Manassa, of Manassa Law, P.C., of Barrington, for appellee. |

---