COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Annunziata and Senior Judge Overton[*]
Argued at Norfolk, Virginia


ALBERT L. KELLN
                                              OPINION BY
v.   Record No. 0871-98-1          JUDGE ROSEMARIE ANNUNZIATA
                                            JUNE 29, 1999
AMANDA F. B. KELLN


             FROM THE CIRCUIT COURT OF MATHEWS COUNTY
                    Prentis Smiley, Jr., Judge

           McClanahan Ingles; Michael L. Wood (Martin,
           Ingles & Ingles, on brief), for appellant.

           Kenneth R. Yoffy (Cope, Olson & Yoffy, on
           brief), for appellee.


     Albert Kelln ("husband") challenges the circuit court's

classification of certain assets transferred in trust during the

marriage of Husband and Amanda Kelln ("wife").  Husband contends

the court erred in holding that the assets at issue, which had

been divided into separate shares pursuant to the terms of a

revocable <u>inter</u> <u>vivos</u> trust agreement, constituted separate

property and, accordingly, were not subject to equitable

distribution under Code § 20-107.3.  For reasons set forth

below, we agree and reverse.

--------------------------------------------------

     [*] Judge Overton participated in the hearing and decision of
this case prior to the effective date of his retirement on
January 31, 1999 and thereafter by his designation as a senior
judge pursuant to Code § 17.1-401, recodifying Code
§ 17-116.01:1.

Husband and wife married on September 1, 1990.  On June 26, 1991, the parties entered jointly into a Revocable Living Trust Agreement ("the Agreement").  The Agreement was executed at the same time as the parties' wills and formed a part of their estate plan.  The relevant provisions of the Agreement follow.

The Agreement created two separate and distinct trusts, one for each spouse.[1]  The Agreement designated husband and wife as both "Grantors" and "Trustees" and stated as its purpose to "provide for the management of the Grantors' assets during the Grantors' lifetimes; to provide a preferred alternative to guardianship proceedings; and to provide a simplified means of

---

[1] Article II provides:

> REGARDLESS OF ANYTHING IN THIS TRUST WHICH
> MIGHT BE RELIED UPON TO THE CONTRARY, THIS
> TRUST IS IN EVERY RESPECT, TWO SEPARATE AND
> DISTINCT REVOCABLE LIVING TRUSTS.  The Two
> Grantors have chosen to maintain their two
> separate trusts together in this one trust
> document for reasons personal to themselves.
> The two trusts held herein shall be viewed
> as having separate and distinct existence,
> and shall be construed (in the light of this
> overriding pronouncement of Grantor's
> intent), so as to arrive at that
> construction which will result in a
> non-revocable credit shelter trust (THE
> FAMILY TRUST, as hereinafter defined) not
> being included in the share of the surviving
> Grantor, while allowing the full marital
> deduction with respect to any portion of the
> trust of the first Grantor to die which
> passes to the Survivor's Trust (as
> hereinafter defined).  The provisions in
> this document shall apply to the
> administration of both Grantors' trust
> shares.

-

accomplishing both lifetime and death transfers of the Grantor[s]' assets."

The trust property was defined in Article II of the Agreement.  Under its terms, assets transferred by the Grantors into the trust were to be designated Schedule A, B, or C assets. All property not specifically designated as a Schedule B or C asset was deemed to be a Schedule A asset.  According to the Agreement, "regardless of how [trust] property was acquired, or how titled . . . , [the property transferred pursuant to the Trust Agreement] shall for all purposes of [the] Trust be divided into two separate shares, one for each Grantor . . . ." Husband's share consisted of one-half of Schedule A assets and all of Schedule B assets.  Wife's share consisted of one-half of Schedule A assets and all of Schedule C assets.  In describing Schedule A assets, the Agreement specifies:  "To the extent that either [spouse's] share [of Schedule A assets] exceeds his or her contribution to the Trust, the amount of the difference or excess contribution shall constitute a completed gift from the other [spouse]."

Each party retained the right to revoke the trust during their joint lifetime, at which time the Trustee was required to "deliver to the Grantors, or as may be directed in the instrument of revocation, their respective shares of the trust property."  The parties also had the right to receive during

-

their lifetimes all of the net income and principal of their respective share.

Upon the death of one of the parties, Article III of the Agreement required the surviving Trustee to make a number of dispositions of the decedent's share in order to take advantage of certain tax provisions of the Internal Revenue Code. Among the stipulated dispositions was the transfer of that portion of the decedent's share which was "necessary to increase the estate of the [surviving] spouse under federal law to an amount which is equal to the total remaining unused unified credit" under 26 U.S.C. § 2010 to the share of the surviving spouse ("the Survivor's Trust"). Assets allocated to the Survivor's Trust were further specifically limited to those assets "which qualify for the marital deduction" under 26 U.S.C. § 2056. In the event the surviving spouse disclaimed the transferred property and to the extent that property remained in the decedent's share, the Agreement required that property be transferred into a credit shelter trust in "any portion necessary to make the [trust] equal to the largest amount" that could "pass free of federal estate tax . . . by reason of the [decedent's] available unified credit."

In contemplation of the tax saving purposes of the Agreement, the following anticipated estate tax goals are set forth in Article III:

-

> For preservation of the marital tax deduction, [the Survivor's Trust] may be paid or transferred outright to the [surviving] spouse if, in Trustee's judgment, such payment would be necessary to prevent the loss of the marital deduction. . . .
>
> The Grantors, by funding the share of the [surviving] spouse [in this manner], are fully aware that the share passing to the [surviving] spouse will be taxed in the estate of the [surviving] spouse if thereafter owned at death. The Grantors prefer to allow [the surviving] spouse the fullest share that will not knowingly incur estate taxation upon the death of the surviving [spouse], as determined at the time of the death of the Grantor, in order to minimize the likelihood of funding a credit shelter trust and thereby incurring the added expenses of such trust, as well as having to dealing [sic] with the inflexibility thereof . . . .

Husband revoked the trust before the parties separated on January 19, 1997. On January 28, 1997, husband filed a bill of complaint for divorce. On February 2, 1998, the trial court held a hearing to determine the classification of the trust property, all of which was transferred into the trust as Schedule A assets. At the hearing, the parties jointly filed the Agreement with the court. Husband's counsel conceded the trust's activation by a transfer of property. No other evidence was introduced by either party.

The court, looking to the four corners of the Agreement, found that the Agreement was clear and unequivocal. Further, the court found that the Agreement created two separate and equal trusts and that assets transferred to a spouse's share

-

pursuant to the Agreement constituted a completed gift from the other spouse. Accordingly, by order of March 19, 1998, the court ruled that all Schedule A assets were separate property to be divided equally among the parties. In doing so, the court did not reference any particular provision of Code § 20-107.3, declined to consider the factors set forth in Code § 20-107.3(E) pertaining to the division of marital property, and referred the case to a special master to determine the precise assets encompassed within Schedule A.

Husband contends the court erred in finding that the transfer of property to the parties' separate trusts pursuant to the Agreement constituted a completed gift from the donor spouse, the nature of which transformed the assets into separate property. Husband cites as particular grounds, the absence of sufficient proof of donative intent to create separate property. See Theismann v. Theismann, 22 Va. App. 557, 566, 471 S.E.2d 809, 813, aff'd on reh'g en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996) (stating that one of the elements of a valid gift is the donor's intent to make a gift). See also Dean v. Dean, 8 Va. App. 143, 146, 379 S.E.2d 742, 744 (1989) (stating that a person who claims ownership of property by gift must prove the donative intent of the donor by clear and convincing evidence). We agree.

The equitable division of property that the parties have transferred to a revocable inter vivos trust for estate planning

-

purposes presents a matter of first impression under Virginia divorce law, and one which few of our sister states have had an opportunity to address directly. However, our analysis is not without well-founded roots in settled law, specifically, the law governing the classification of property under Code § 20-107.3 and of property acquired by interspousal transfers.

Other than a document attached to the Agreement that assigned the parties' furniture, furnishings, and personal effects to the trust, no evidence was presented to establish that the property transferred under the Agreement was separate property. Thus, we treat the assets as marital at the time of the transfer because property acquired during the marriage is presumed to be marital in the absence of satisfactory evidence to the contrary. See Code § 20-107.3(A)(2); Hart v. Hart, 27 Va. App. 46, 61, 497 S.E.2d 496, 503 (1998).[2]

The query before us, therefore, is whether marital property can be transformed into separate property under the terms of a revocable trust agreement executed during a marriage. In

---

[2] We note, however, that whether the property was marital or separate before it was transferred into the trust, the resolution of the issue remains the same under the facts of this case, as the determinative analysis is premised on the issue of donative intent to create separate property, not the source or nature of the property. See Theismann v. Theismann, 22 Va. App. 557, 566, 471 S.E.2d 809, 813, aff'd on reh'g en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996); McDavid v. McDavid, 19 Va. App. 406, 411-12, 451 S.E.2d 713, 717 (1994) (turning on evidence of donative intent, not the nature of the property that was the subject of the interspousal gift).

-

McDavid v. McDavid, 19 Va. App. 406, 451 S.E.2d 713 (1994), we determined that "property which is marital may become separate . . . through 'a valid, express agreement by the parties.'" Id. at 411, 451 S.E.2d at 717 (quoting Wagner v. Wagner, 4 Va. App. 397, 404, 358 S.E.2d 407, 410 (1987)). In that case, we affirmed the trial court's ruling that real property acquired during the marriage was properly classified as husband's separate property based on the terms of a deed of gift executed by wife, transferring her interest in the property to husband. See id. at 408, 411, 451 S.E.2d at 715, 717. The McDavid deed provided that the property was to be held by husband "in his own right as his separate and equitable estate as if he were an unmarried man . . . free from the control and marital rights of this present . . . spouse" and "with full and complete power . . . [to] dispose of the . . . property . . . during his lifetime . . . [or by devise]." Id. at 411, 451 S.E.2d at 717. We found that under the provisions of Code § 20-155, which accords post-marital contracts the same dignity under law as pre-marital contracts,[3] the terms of the McDavid deed rebutted

_____

[3] Code § 20-155 provides:

> Married persons may enter into agreements
> with each other for the purpose of settling
> the rights and obligations of either or both
> of them, to the same extent, with the same
> effect, and subject to the same conditions,
> as provided in §§ 20-147 through 20-154 for
> agreements between prospective spouses,
> except that such marital agreements shall

-

the presumption that "property acquired during marriage with marital funds is marital property." Id. at 411, 451 S.E.2d at 717.

Prior to our decision in McDavid, we dealt with an earlier line of cases which held that property transferred by interspousal gift was marital property because the property was acquired during the marriage and the evidence was insufficient to support the classification of the transferred property as separate under Code § 20-107.3. See Garland v. Garland, 12 Va. App. 192, 196, 403 S.E.2d 4, 7 (1991). In Garland, husband conveyed his entire interest in the marital residence to wife in anticipation of a pending divorce action. See id. at 193, 403 S.E.2d at 5. Subsequently, the parties reconciled, but legal title to the residence remained in wife's name. See id. In conjunction with husband's later suit for divorce, the trial court found that the marital residence was wife's separate property. See id. at 194, 403 S.E.2d at 6. We reversed, stating, "[e]ven though the wife may retain legal title to the property as a result of the separation agreement, whether the property is separate or marital is determined by the statutory definition and is not determined by legal title." Id. at 195, 403 S.E.2d at 6. We further noted that wife's interest was governed by Code § 20-107.3(A)(1), which limits the acquisition

_____

become effective immediately upon their execution.

-

of separate property by gift to property received from a source other than the donee's spouse.  See id. at 196, 403 S.E.2d at 7. See also Kauffman v. Kauffman, 7 Va. App. 488, 496, 375 S.E.2d 374, 377 (1988) (finding insufficient evidence to overcome presumption that jewelry given to wife during the marriage was marital property, not her separate property).  Neither Garland nor Kauffman involves a transfer of property or an agreement from which the intent to convey an asset as a spouse's separate property under Code § 20-107.3 is proven by express and specific language, as was the situation in McDavid.

Kauffman, Garland, and McDavid each considered the question of interspousal transfer of marital property by gift.  In Theismann v. Theismann, we addressed the same question in the context of an interspousal gift of separate property.  The husband in that case retitled his separate real property and two separate financial accounts jointly in his and his wife's name. See Theismann, 22 Va. App. at 565, 471 S.E.2d at 813.  We affirmed the trial court's finding that the transfer constituted a gift to the wife, which provided a ground for distribution of a portion of the property's value to her as part of an award of marital property.  See id. at 566-68, 471 S.E.2d at 813-14.  In essence, we held that a gift of separate property during the marriage becomes marital property subject to division pursuant to the factors listed under Code § 20-107.3(E).  See id. at 567-69, 471 S.E.2d at 813-14.  See also J. Thomas Oldham,

-

<u>Divorce, Separation and the Distribution of Property</u>
§ 6.02[3][b] (1998).

The principles that emerge from the cases addressing the classification of property which has been the subject of interspousal gift do not depend upon the classification of the source of the property but rather upon whether one party by clear and express language intended to give the asset as the other spouse's separate property or merely intended to make a gift during the marriage, which becomes marital property.  Where the facts clearly and unambiguously support the conclusion that one of the parties has relinquished all right and interest in marital property and has transferred those rights unconditionally to the other, to the exclusion of the donor's continuing claim upon the property as a marital asset pursuant to Code § 20-107.3, a separate property right will be found to exist.  <u>See</u> Code § 20-107.3(A)(2) (stating that property acquired during the marriage by either spouse and before the last separation of the parties "is presumed to be marital property <u>in the absence of satisfactory evidence that it is separate property.</u>") (emphasis added)); <u>McDavid</u>, 19 Va. App. at 411-12, 451 S.E.2d at 717; <u>Kauffman</u>, 7 Va. App. at 496, 375 S.E.2d at 377.  However, it is not enough to merely change legal title.  <u>See</u> <u>Garland</u>, 12 Va. App. at 195, 403 S.E.2d at 6.  As noted by one commentator:

-

> "An interspousal gift could be construed as evidence of an implied agreement that the transferred asset should not be marital property, but such an agreement is not automatically present merely because an interspousal gift was made. Indeed many interspousal gifts are made without any intent of removing the asset from the marital estate in the event of divorce."

Brett R. Turner, Equitable Distribution of Property 217 (2nd ed. 1994) (citing Hemily v. Hemily, 403 A.2d 1139, 1143 (D.C. 1979)). See In re Marriage of Davis, 215 Ill. App. 3d 763, 771, 576 N.E.2d 44, 50 (Ill. App. Ct. 1991) (holding that under Illinois law the presumption that property acquired by either spouse during the marriage is marital property can be overcome only "by clear, convincing, and unmistakable evidence" that the property was acquired by gift from the other spouse).

It follows that equivocal evidence of intent, including evidence of a purpose unrelated to the making of a gift, may defeat a claim of separate property before the divorce court. See, e.g., Hoagland v. Hoagland, 852 P.2d 1025, 1028 (Utah Ct. App. 1993) (holding the trial court acted within its discretion in concluding that real property, conveyed by husband to wife by quitclaim deed in order to protect it from creditors of husband's failing business, was marital property); In re Marriage of Parr, 103 Ill. App. 3d 199, 206-07, 430 N.E.2d 656, 661-62 (Ill. App. Ct. 1981) (finding that the presumption in favor of classifying property acquired during the marriage as marital was not rebutted when husband quitclaimed his interest

-

in a condominium to wife for business and tax purposes); In re Marriage of Leff, 148 Ill. App. 3d 792, 807-08, 499 N.E.2d 1042, 1052-53 (Ill. App. Ct. 1986) (affirming the trial court's finding that the marital residence, acquired during the marriage, was marital property when husband testified he placed title in wife's name to protect the residence from a possible malpractice action and wife failed to rebut presumption that property was marital by clear and convincing evidence); Davis, 215 Ill. App. 3d at 771-73, 576 N.E.2d at 50-51 (determining that husband's transfer of his interest in the marital residence to wife by quitclaim deed was not a gift that transformed the property into wife's separate property because transfer was made as part of an estate tax planning scheme); In re Marriage of Wojcicki, 109 Ill. App. 3d 569, 572-75, 440 N.E.2d 1028, 1030-31 (Ill. App. Ct. 1982) (finding that husband's transfer of his separate real property to joint tenancy with his wife for the purpose of avoiding probate was not a gift of the property to the marital estate); Weberg v. Weberg, 158 Wis.2d 540, 550-52, 463 N.W.2d 382, 386-87 (Wis. Ct. App. 1990) (rejecting wife's argument that husband's separate funds became marital property when placed in a joint account based on the absence of evidence showing donative intent and on husband's testimony that he placed the funds in the joint account to protect wife in the event of his death); Berry v. Breslain, 352 N.W.2d 516, 518 (Minn. Ct. App. 1984) (finding that wife's home, although

-

transferred to joint tenancy with husband upon marriage, remained her separate property because the joint tenancy was created primarily to ensure security on the mortgage).

In short, when evidence of intent to relinquish all present and future dominion over the property so as to remove it from the marital estate is lacking, the presumption of Code § 20-107.3(A)(2) that property acquired by either spouse during a marriage is marital remains unrebutted.  See McDavid, 19 Va. App. at 411-12, 451 S.E.2d at 717; Kauffman, 7 Va. App. at 496, 375 S.E.2d at 377.  See e.g., Davis, 215 Ill. App. 3d at 771, 576 N.E.2d at 50.

In determining whether the Agreement contains sufficient evidence of donative intent to create separate estates, principles governing the construction of contracts are applicable.  The "fundamental rule" when construing a contract is "to ascertain the intent of the parties . . . ."  Monterey Corp. v. Hart, 216 Va. 843, 850, 224 S.E.2d 142, 147 (1976).  In order to determine intent, courts may look to the "language employed, the subject matter, and the surrounding circumstances."  Id.  The construing court "must give effect to all of the language of [the instrument] if its parts can be read together without conflict."  Berry v. Klinger, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983).  Further, the instrument must be read as a single document, with meaning given to every clause. See id.; Winn v. Aleda Constr. Co., 227 Va. 304, 307, 315 S.E.2d

-

193, 195 (1984) ("No word or clause will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words aimlessly."). "The facts and circumstances surrounding the parties when they made the contract, and the purposes for which it was made, may be taken into consideration as an aid to the interpretation of the words used, but not to put a construction on the words the parties have used which they do not properly bear." Seaboard Air Line R.R. Co. v. Richmond-Petersburg Turnpike Authority, 202 Va. 1029, 1033, 121 S.E.2d 499, 503 (1961). See Monterey, 216 Va. 850-51, 224 S.E.2d at 147 ("'[Courts] are never shut out from the same light which the parties enjoyed when the contract was executed, and in that view they are entitled to place themselves in the same situation which the parties who made the contract occupied, so as to view the circumstances as they viewed them, and so to judge of the meaning of the words and of the correct application of the language to the things described.'" (quoting Bank of Old Dominion v. McVeigh, 32 Gratt. (73 Va.) 530 (1879))).

Applying these principles here, we find that the record does not contain clear and unambiguous evidence that either party intended to relinquish his or her interest in marital property and to create separate estates upon the division and transfer of the property into equal shares under the Agreement. The Agreement reflects a clear purpose to establish a mechanism,

-

using a revocable trust as the vehicle, that would enable the parties to take advantage of provisions in the Internal Revenue Code allowing married persons to minimize federal estate tax liability. Accordingly, the parties' agreement to divide and place their assets into equal shares must be viewed in light of the contemplated tax purposes that the Agreement was intended to serve. Wife's contention that the equal division of Schedule A assets into two separate shares evidences the husband's intent to make a completed gift to her of the property transferred to Schedule A fails to consider that under the estate tax laws, which underlay the parties' Agreement, the equal division of the marital estate was critical to assuring the avoidance of tax liability upon death. See 26 U.S.C. §§ 2001(a), 2010(a), 2056(a), 2523(a); see also James F. Farr & Jackson W. Wright, An Estate Planner's Handbook § 50, at 335 (1979) ("Because of the progressive rates, the impact of federal estate taxes on the combined estate of husband and wife must be least when their taxable estates are approximately equal. . . . The opportunity to split the taxable estates of husband and wife by means of the estate tax marital deduction is entirely lost if the wife, [for example,] having little or no property of her own, is the first to die. This situation can be guarded against by gifts to the wife during her life, insuring that she can at least use most of the unified credit which will be available to her estate.") (emphasis added)). The trust provision that directs, to the

-

extent a spouse's share of trust assets exceeds his or her contributions to the trust, the difference in the contributions "shall constitute a completed gift from the other [spouse]," must be similarly understood, as this provision is likewise critical to the estate planning and tax liability reduction purposes of the instrument. See Farr & Wright, supra, § 50, at 181-82 (Supp. 1995) ("If the [one spouse] does not have sufficient property to utilize [his or her] full credit, [the other spouse] should consider making gifts to her so that she will be able to use her full credit if she should die first.").

Furthermore, the evidence fails to support the obverse proposition espoused by wife. The Agreement, by its terms, affords no evidence that, at the time of the trust's formation, the parties contemplated it would govern the classification of property in the event of divorce. Indeed, the provisions of Article III regarding disposition of the trust's assets upon the death of either spouse, when coupled with the contemporaneous execution of the parties' wills, make plain that the parties' underlying expectation was the survival of their marriage, not its demise.

Unlike the deed of gift in McDavid, which explicitly stated that husband was to hold the transferred property "in his own right as his separate and equitable estate" as if unmarried, free from the control and marital rights of his spouse, such language of clear donative intent to create separate property

-

pursuant to Code § 20-107.3 is absent here. Indeed, it is clear that both husband and wife intended to retain their interest in the trusts' assets, each being named the beneficiary of the share held by the other, with the remainder passing to their children and other named beneficiaries upon the death of both parties.

Finally, we note that the retention of the right to revoke the trust by each spouse supports the conclusion that neither had the requisite donative intent to transform marital property into separate, as was the case in McDavid. Retaining the right to revoke a trust is inconsistent with the notion that a grantor has relinquished all right and interest in the trust property. See Burnet v. Guggenheim, 288 U.S. 280, 284, 53 S. Ct. 369, 390 (1933) (finding that property transferred to revocable trusts did not constitute a completed, taxable gift to the beneficiaries until the grantor's power to revoke was eliminated); Newman v. Commissioner of Internal Revenue, 222 F.2d 131, 136 (9th Cir. 1955) (finding that settlor's transfer of property under a revocable trust was not a completed gift for purposes of taxation so long as the right to revoke existed); In re Estate of Knickerbocker, 912 P.2d 969, 977 (Utah 1996) ("To make an equitable division of the marital assets, the court needs flexibility to decide upon the evidence whether . . . property transferred by one spouse into a revocable trust[] should be included within the marital estate."); Lynch v. Lynch,

-

522 A.2d 234, 235 (Vt. 1987) (finding that property in trust, because the grantor spouse expressly reserved the power to revoke the trust, was owned by the grantor and thus subject to equitable distribution as marital property); Friedrich v. Bancohio National Bank, 470 N.E.2d 467, 471 (Ohio Ct. App. 1984) (stating that the grantor of property held in trust "retains the right to reinvest himself with legal title at some point in the future" by reserving a power of revocation); Salvio v. Salvio, 441 A.2d 190, 197-98 (Conn. 1982) (finding that, in the absence of any unequivocal act rendering savings account trusts irrevocable or otherwise transferring ownership rights to the beneficiaries, trusts established by wife were the property of the marriage and subject to the trial court's power to distribute marital assets); Brett R. Turner, Equitable Distribution of Property § 6.28, at 447 (2nd ed. 1994) (stating that courts treat the power to revoke a trust as "tantamount to the power of ownership" and that assets transferred into a revocable spousal trust are generally treated as if owned by the settlor spouse individually).  Viewed in this light, the power of revocation possessed by the parties under the Agreement supports the conclusion that husband had no intent to divest himself of all of his right and interest in the marital assets transferred into the trust.

Under Virginia law, in the absence of clear and unambiguous evidence of intent to create a separate estate in the other

-

party, an interspousal gift is ineffective as a device to transform an asset into the separate property of the donee spouse. See, e.g., McDavid, 19 Va. App. at 411-12, 451 S.E.2d at 717; Theismann, 22 Va. App. at 566, 471 S.E.2d at 813. Accordingly, we reverse the trial court and remand for further consideration of the division of the parties' marital assets in accordance with Code § 20-107.3.

Reversed and remanded.

-