2006 OK CIV APP 112

**D. BARTLETT, Plaintiff/Appellee,**

v.

**S. BARTLETT, Defendant/Appellant.**

**No. 100,638.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Feb. 10, 2006.

As Corrected on Denial of Rehearing April 12, 2006.

Certiorari Denied Sept. 18, 2006.

---

Joseph R. Farris, Jody R. Nathan, Feldman, Franden, Woodard, Farris & Boudreaux, Tulsa, OK, for Plaintiff/Appellee.

David A. Tracy, Don E. Williams, Naylor, Williams, & Tracy, Inc., Tulsa, OK, for Defendant/Appellant.

KENNETH L. BUETTNER, Chief Judge.

¶ 1 Defendant/Appellant S. Bartlett (Wife) appeals from the Decree of Divorce as well as other court orders in this dissolution proceeding filed by Plaintiff/Appellee D. Bartlett (Husband). We hold that the trial court erred in finding that Husband rebutted the presumption of a gift which arose when Husband placed the marital residence and six other properties in joint tenancy with Wife; we therefore reverse that part of the Decree.

As to Wife's remaining claims, we find the trial court did not abuse its discretion and the relevant provisions in the Decree are not against the clear weight of the evidence. We therefore affirm the Decree in all respects except the finding that Husband had rebutted the presumption of a gift as to certain properties. We remand for determination whether the properties, which became marital property when Husband conveyed them to joint tenancy with Wife, remained marital property or whether the parties converted those marital assets to separate property when they conveyed them to Husband's and Wife's revocable trusts.

¶ 2 Husband and Wife were married in 1982. Their only child was born in July 1987. Husband filed his Petition for divorce February 6, 2002. Trial was held January 5–9, 2004 and the trial court issued its Journal Entry of Judgment and Decree of Dissolution of Marriage July 21, 2004.

¶ 3 An action for divorce, alimony, and division of property is one of equitable cognizance, and reviewing a case of equitable cognizance, the judgement of the trial court will not be disturbed unless the trial court abuse its discretion or unless the court's findings were clearly against the weight of the evidence. *Hough v. Hough,* 2004 OK 45, ¶ 9, 92 P.3d 695, 700.

### I.

### ISSUES RELATING TO PROPERTIES PLACED IN JOINT TENANCY AND IN WIFE'S REVOCABLE TRUST

¶ 4 Wife first asserts the trial court erred in finding that many of the disputed assets

were Husband's separate property and had not become marital property by commingling or transmutation. During the marriage, the parties bought a house, using Husband's separate funds, which was conveyed by the sellers to Husband and Wife in joint tenancy. Husband also placed six other parcels of land in joint tenancy with Wife. In 1997, the parties conveyed the house and an undivided half interest in the remaining joint tenancy properties to Wife's separate trust (at the same time they conveyed an undivided half interest to Husband's separate trust). One of the issues at trial was whether the house and other real properties were separate or marital property.

¶ 5 The trial court addressed this issue in Part IV of the Decree. The court noted three factors must be considered in determining whether assets are marital or separate: 1) the source of origin, 2) intent regarding transfer of title, and 3) acquisition or enhancement in value through industry, efforts, or funds of the non-owning spouse.

¶ 6 The trial court made separate findings regarding the parties' marital residence and we address that property first. The trial court found that Husband acquired the house during the marriage with "funds whose origin is traced to [Husband's] separate property to include a family trust, direct inheritance, or from sale of property received by [Husband] through trust or inheritance." [1] The parties purchased the home in 1987, well before the parties began their estate planning measures, and the sellers conveyed the

---

1. Specifically, the trial court held that Husband used funds traced to the family trust or other inheritance to purchase the marital residence; $132,797 in trust funds to make improvements to the home, and $183,777 in trust funds to pay off the mortgage on the home. The trial court valued the home at $385,000 and awarded it to Husband. The trial court directed Husband to pay Wife $60,000 as her marital interest in the home, based on the home's value minus the cost of improvements made with Husband's separate funds. The evidence clearly shows that when the parties purchased the home, five years after they were married, they took title in joint tenancy. Ten years later, the parties conveyed to home to Wife's revocable trust for estate planning purposes.

Regarding the marital residence, Husband testified that in December 1987, "well, we bought—I bought the...." His counsel then asked "(h)ow much did you and [Wife] pay for that residence?" To which Husband responded he paid roughly $255,000 for the house, paying a $50,000 down payment from his Bank of Oklahoma Investor Fund account, and the remainder financed. The sellers conveyed the house by warranty deed to Husband and Wife as joint tenants. Husband testified that in 1990 "we began a very extensive remodeling on the house" for which he spent about $130,000 of his trust proceeds. Before 1994, Husband used trust proceeds to pay off the mortgage on the home.

Husband agreed that he and Wife originally owned the house as joint tenants, and that they later conveyed it to Wife's revocable trust. Hus-

home to Husband and Wife as joint tenants. The testimony and evidence shows that Husband treated the home as marital property until he testified at trial. Additionally, the evidence does not indicate a non-gift purpose for taking title to the house in joint tenancy when the parties purchased the home in 1987. As explained in footnote 1, above, Husband testified he had treated the house as marital property, but that he did not intend a gift of half an interest in the home to Wife.

█ ¶ 7 It has long been the rule in Oklahoma that when spouses own property in joint tenancy, regardless of the source of the funds used for purchasing the property, a gift of the property to the marital estate is presumed. *Shackelton v. Sherrard*, 1963 OK 193, 385 P.2d 898, 900. The party seeking to rebut that presumption must present clear and convincing evidence that no gift was intended. *Chastain v. Posey*, 1983 OK 46, 665 P.2d 1179. More recently, the Oklahoma Supreme Court has clarified this holding to require a party seeking to rebut the gift presumption to present clear and convincing evidence of a purpose for placing the property in joint tenancy which is collateral to intending a gift. *Larman v. Larman*, 1999 OK 83, ¶ 9, 991 P.2d 536. Husband offered no collateral purpose, existing at the time of the conveyance, for placing the home in joint tenancy.

█ ¶ 8 "The presumption that property held in joint tenancy form is marital property is a strong one, which can only be overcome by clear and convincing evidence. A presumption may be attacked by the introduction of evidence sufficient to support a finding of the nonexistence of the presumed fact; where the presumption is a strong one, the weight of the evidence to rebut it must be great." *In re Marriage of Smith*, 265 Ill. App.3d 249, 202 Ill.Dec. 738, 638 N.E.2d 384, 388 (1994). Generally, "if one spouse has caused his or her separate property to be transferred to both spouses jointly, *mere self-serving testimony that it was not intended as a gift is entitled to little weight.*" *Coleberd v. Coleberd*, 933 S.W.2d 863, 870 (Mo. App.1996), citing *Clark v. Clark*, 919 S.W.2d 253, 255 (Mo.App.1996) (emphasis added). See also *Rutland v. Rutland*, 652 So.2d 404, 406 (Fla. 5th DCA 1995), receded from on other grounds, *Anson v. Anson*, 772 So.2d 52 (Fla. 5th DCA 2000)(*en banc* ) ("[t]he husband's conduct evidencing joint ownership simply cannot be overcome by the mere unsubstantiated claim, raised for the first time during a dissolution proceeding, that he never intended a gift to the wife at the time of the conveyance").

█ ¶ 9 Husband's only testimony about his intent at the time the house was initially purchased was that he never intended a gift. Husband agreed he had treated the home as marital property until the time of trial. Neither of these facts support a finding by clear and convincing evidence that a collateral purpose existed at the time the house was acquired. The parties' estate planning meas-

band testified that he determined that he and Wife should create two revocable trusts for estate planning purposes to avoid estate taxes. Husband testified he relied on the advice of an attorney in acting to place certain assets in the trusts. During direct examination in his case, Husband testified as follows about the residence:

Q: On Exhibit 8, we have (the house) listed as marital property, right? That's been listed right there?
A: Yes.
Q: *Historically, that's the way you've treated it.* In fact, it is now in (Wife's) revocable trust, right?
A: *That's correct.*
Q: Do you concede that this is a martial asset completely?
A: No.
Q: Why not?

A: A portion of it could be. However, I would say a majority if not all of it should be considered as personal property because the source of the funds that paid for it, the source of the funds that paid for the renovation and remodeling of it came from the income of my separate property, my inheritance.
Q: All right, sir. But you understand that it's been placed in joint tenancy and then even conveyed into (Wife's) revocable trust, right?
A: I understand that.
Q: In connection with those transfers, sir, did you ever intend to make a gift to (Wife) of any interest in that property?
A: No, sir.
(Emphasis added.) Husband also testified on cross-examination that he had told his son that he and Wife should sell the house and that doing so would be in Husband's and Wife's best interests.

ures, which involved conveying the house to Wife's separate trust ten years after the parties originally purchased the house, could not have converted the property to Husband's separate property, because at that time the house was a marital asset. Husband's declaration at trial, over fifteen years after the house was acquired in joint tenancy, that he did not intend a gift, without more, does not provide clear and convincing evidence of a purpose collateral to intending a gift. In this case, the parties did not create their estate planning trusts until 1997. Although the parties may have conveyed the house to Wife's trust for estate planning purposes in 1997, the presumption is that the home had become marital property by gift at the time it was purchased, and we have noted Husband presented insufficient evidence of a non-gift purpose to rebut that presumption. Accordingly, the home was marital property.

¶ 10 However, in 1997, the parties conveyed the marital residence by warranty deed to Wife's revocable trust. The home remained titled solely in Wife's revocable trust at the time of the divorce proceedings. As a result, there is an issue whether the parties intended to gift that marital asset to the separate estate of Wife, or whether the home remained marital at the time of divorce.

2.  Title 43 O.S.2001 § 204 provides:
    Either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which either might, if unmarried, subject, in transactions between themselves, to the general rules which control the actions of persons occupying confidential relations with each other as defined by the title on trusts.
    Title 43 O.S.2001 § 205 provides:
    A husband and wife cannot, by any contract with each other, alter their legal relations, except as to property, and except that they may agree in writing to an immediate separation, and may make provision for the support of either of them and of their children during such separation.

3.  This is due, in part, to the statute now codified at 43 O.S.2001 § 121. That statute provides, in part, that upon granting a divorce,
    As to such property, whether real or personal, which has been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of said parties, the court

¶ 11 In *Manhart v. Manhart,* 1986 OK 12, ¶ 40, 725 P.2d 1234, 1240, the Oklahoma Supreme Court explained that two Oklahoma statutes, which allow spouses to convey property one to the other, support the view that spouses may remove jointly acquired property from the marital estate by conveying it to the separate estate of one or the other spouse, citing what is now 43 O.S.2001 § 204 and § 205.[2] *Manhart* indicated that the conveyance to one spouse may, but does not necessarily, alter the status of marital property:[3]

> Whether the property remains the separate property of the spouse to whom it was conveyed, depends on how the spouses treat the property. If they jointly use and manage the property, then it may be considered "jointly acquired." The controlling facts in such cases are the time of the conveyance in relation to the separation of the spouses, and the completeness of their separation, especially in regard to their dealings concerning the conveyed property.

*Id.* at 1240 (citations omitted).

¶ 12 The opinion of the Oklahoma Court of Civil Appeals in *Dorn v. Heritage Trust Co.,* 2001 OK CIV APP 64, 24 P.3d 886, suggests the home in this case remained marital after it was conveyed to Wife's trust, even if that was done for estate planning purposes.[4] In this case, Husband and Wife

shall, . . . make such division between the parties as may appear just and reasonable, . . . .

4.  In *Dorn,* the parties conveyed jointly acquired property to Wife's separate trust during marriage for estate planning purposes. During the divorce proceedings, the Wife argued that the conveyance was a gift of marital property to her separate estate. In *Dorn,* the Court of Civil Appeals considered the following facts before finding that the trial court's decision, that the property placed in the Wife's trust remained marital property, was not against the clear weight of the evidence:

    it is undisputed that Husband and Wife were not separated nor had they even planned to separate or divorce when they executed the joint quitclaim deed in favor of Wife's trust. As did the couples in the inter-spousal conveyance cases distinguished by *Manhart,* Husband and Wife continued their marital relations for over 4 years after the creation of the trust in 1991 and 3 years after the execution of the joint quitclaim deed, both of them living to-

lived together in the home for nearly fifteen years. They lived there together for five years after conveying the home to Wife's revocable trust. And, both began the divorce proceedings claiming the home was marital. Necessarily, however, transferring *marital property to Wife's trust* could not convert what was marital property into *Husband's separate property.*

■ ¶ 13 We therefore reverse the finding that the home was Husband's separate property. We remand this matter to the trial court to determine, based on the analysis in *Manhart* and *Dorn,* whether the home remained marital at the time of divorce, or whether the parties succeeded in making a gift of the home to Wife's separate estate when they conveyed the home to Wife's separate trust. If the trial court determines the home retained its status as marital property despite being conveyed to Wife's trust, the trial court must equitably divide that asset. 43 O.S.2001 § 121. Or, if the trial court determines the parties gifted this marital

property to Wife's separate estate, then the trial court must set that property aside to Wife. *Id.*

¶ 14 We next address the trial court's finding that Husband rebutted the presumption of a gift of certain properties other than the marital residence. The record indicates six parcels had been conveyed at various times to the parties as joint tenants, tenants in common, or to the parties' revocable trusts.[5] The properties listed by the trial court in this part of the Decree included: 1) Sage Properties; 2) Lumen Oil;[6] 3) liquidation of various oil and gas interests; 4) undivided ½ interest in 80 acres in Osage County;[7] 5) undivided ½ interest in 4 lots in Delaware County;[8] 6) ½ interest in 40 acres in Seminole County;[9] 7) ½ interest in notes receivable from sale of real property in Tulsa County; 8) ½ interest in 4 acres in Washington County; 9) ½ interest in 70 acres in Nowata County;[10] 10) 7/324 interest in 160 acres in Creek County;[11] 11) ½ interest in 80 acres in Creek

gether in their condominium until their separation in 1995. Further, Husband testified by deposition that the two trusts were created for estate planning purposes in order to minimize federal estate tax.
24 P.3d at 890.

5. The trial court listed 13 assets in this part of the Decree, but the evidence indicates only six had been conveyed to joint tenancy with Wife, and the parties later conveyed a half interest in each of the six properties to Wife's trust and a half interest to Husband's trust. It is unclear why the trial court included properties which had not been conveyed to joint tenancy or to Wife's trust in that part of the Decree addressing the presumption of a gift.

6. Wife does not claim that Sage Properties or Lumen Oil were ever titled in joint tenancy or in Wife's separate trust.

7. Husband indicated in his affidavit that in 1984, he and a friend purchased an undivided half interest in 80 acres in Osage County, and that the seller required the wives of Husband and his friend to co-sign the note and mortgage. Husband explained "(i)n conjunction with executing the mortgage and for estate planning purposes, I subsequently conveyed title to my undivided ½ interest in the 80 acres into joint tenancy with (Wife)." Husband averred that in June 1998 "for additional estate tax protection" he and Wife conveyed the 80 acres in Osage County into their separate revocable trusts. Husband attached a general warranty deed, dated June 26, 1998 and recorded in July 1998, by which Hus-

band and Wife conveyed an undivided half interest in the 80 acres to Husband's trust and an undivided half interest in the 80 acres to Wife's trust.

8. Wife's Exhibit 51 is a mortgage showing James Wallace purchased an undivided half interest in the 4 lots, and Husband and Wife, as joint tenants, purchased an undivided half interest in the lots in 1994. In July 1998, the parties conveyed half of this asset to Wife's trust and half to Husband's trust. (Wife's Ex. 52).

9. Keener Oil conveyed the 40 acres (plus one lot) in Seminole County, 4 acres in Washington County, 80 acres in Creek County, and 30.23 acres (plus one lot) in Tulsa County to Husband and Wife as joint tenants in 1994. (Wife's Ex. 53). In July 1998, Husband and Wife conveyed half of these properties to Wife's trust and half to Husband's trust. (Wife's Exhibits 55, 57, 59, and 61).

10. Wife does not claim an interest in the Nowata County property. Husband's Exhibit 17 indicates Husband inherited mineral rights in Nowata County. Nothing in the record indicates this asset was ever placed in joint tenancy with Wife, nor was it placed in Wife's trust.

11. Husband averred he owned this parcel before marriage and never conveyed it to joint tenancy or to the parties' trusts. Therefore, no presumption of gift arose as to this property and the evidence supports the trial court's finding that it was Husband's separate property.

County; 12) Pecan Farm, 380 acres in Osage County;[12] and 13) a condominium on Woodward Blvd.[13]

¶ 15 In his affidavit attached to his motion for partial summary judgment on this issue, Husband averred that he created revocable trusts for himself and Wife solely to reduce or avoid paying estate taxes. He further stated that on the advice of his attorney, he conveyed assets up to an equal value of $600,000 to each trust. At trial, Husband testified that he had seen firsthand the effects of his father's failure to do any estate planning, and Husband hoped to avoid estate taxes by creating the trusts.

¶ 16 In *Larman, supra,* the Oklahoma Supreme Court explained that when separate property is placed in joint tenancy, there is a rebuttable presumption that a gift, of the separate property to the marital estate, was intended. That presumption may be overcome by clear and convincing evidence that no gift was intended-that is, clear and convincing evidence of a purpose for the change in title which is collateral to intending a gift. *Id.* In *Larman,* the wife presented undisputed evidence that she transferred two pieces of separate real property to joint tenancy only because Fannie Mae required the properties to be in both names in order for the wife to refinance the mortgages on those properties. The wife also testified she did not understand the legal consequences of changing the ownership. The Oklahoma Supreme Court held that the wife's stated pur-

pose for the conveyance, to obtain financing, was a purpose collateral to intending a gift, which rebutted the presumption that the wife had made a gift of separate property to the marital estate.

¶ 17 The issue here, therefore, is whether Husband's stated reason for the change in title, estate planning and avoiding estate taxes, is a reason collateral to intending a gift, or whether that reason instead shows actual intent to gift an interest in the properties.[14]

¶ 18 The *Larman* court cited *In re Marriage of Wojcicki,* 109 Ill.App.3d 569, 65 Ill. Dec. 173, 440 N.E.2d 1028 (1982), for the holding that a husband's transfer of real property to joint tenancy with his wife to avoid probate was not a gift of the property to the marital estate. The evidence in *Wojcicki* showed that the Husband was an immigrant who experienced difficulty succeeding to title to his properties after his first wife died. He therefore asked his attorney to place his properties in joint tenancy with his second wife in order to prevent such difficulty upon the death of either party. This circumstance, coupled with other factors, led the Illinois Court to affirm the finding that the Husband had overcome the presumption of a gift.[15] *Wojcicki* is therefore not a case involving the stated reason of avoiding probate taxes, but rather avoiding the perceived difficulty of passing title through probate. There may have been an intent to gift property *upon death,* but not an

---

12. The trial court held the Pecan Farm was Husband's separate property in its order granting partial summary judgment filed October 10, 2003. The record indicates Husband purchased the Pecan Farm near or after the time of separation. We have found no evidence indicating the Pecan Farm was ever placed in joint tenancy or in Wife's trust. The partial summary judgment found that Keener Oil, Sage Properties, Lumen Oil, and the Pecan Farm were Husband's separate property. The partial summary judgment order denied summary judgment as to the properties which had been conveyed to joint tenancy or to Wife's trust, after the court found that the ownership of those properties was a disputed fact issue.

13. Wife's Ex. 64 is a warranty deed showing this condominium was conveyed from the sellers to Husband's trust in 2001, after separation.

14. We note again, however, that Husband conveyed many of these properties to joint tenancy years before the parties began their estate planning. But assuming, arguendo, the trial court accepted Husband's stated reason for the conveyances, we must determine whether that reason is a purpose collateral to intending a gift.

15. One of those factors was that the husband had owned the properties for several years before marriage. Interestingly, the court noted that it had previously been held in Illinois that where property is placed in joint tenancy after marriage, particularly where other properties are left in the name of one party, suggests an intent to gift the joint tenancy property. *Id.,* citing *In re Marriage of Rogers,* 85 Ill.2d 217, 223, 52 Ill.Dec. 633, 422 N.E.2d 635 (1981). That circumstance exists here, where Husband conveyed certain of his assets to joint tenancy, while keeping others in his separate name.

intent to make a current gift. We are not persuaded that the *Larman* court's recognition of *Wojcicki* indicates that transferring property to joint tenancy for the purpose of avoiding estate taxes (as opposed to avoiding probate) may overcome the gift presumption in Oklahoma.

¶ 19 We note the following commentary on this issue from *When Title Matters: Transmutation and the Joint Title Gift Presumption*, 18 J. Am. Acad. Matrim. L. 335, 350–353 (2003):

> The best evidence a spouse could have to rebut the joint title gift presumption is a written instrument signed by both parties with an express provision stating that no gift is intended. Most people, however, do not have such a document, and lack of donative intent must be proven otherwise. A lack of consent to the conveyance will negate the necessary donative intent. Thus, a conveyance from a third person to the spouses in joint title may be the separate property of one spouse if the donor did not intend both spouses to share, but made the conveyance into joint title on the advice of counsel.
>
> Similarly, consent obtained by fraud, duress, or undue influence will negate donative intent. An invalid deed will also negate donative intent. A conditional gift that fails for the condition will also rebut the presumption of gift; in this case, the donative intent is missing because the condition is not fulfilled. Similarly, evidence that despite the conveyance into joint title, the parties continued to treat the asset as separate property may be good evidence to rebut the gift presumption. These cases where the spouse making the conveyance retains control over the jointly titled property can be seen as rebutting the gift presumption for lack of delivery of a gift. Some courts have held that the fact that the marriage was of short duration supports proof of lack of intent to make a gift, although this does not make sense: at the time of the gift, the duration of the marriage could not be known, and present intent to make a gift is determinative of donative intent.
>
> *The most commonly stated reason to negate donative intent is that the conveyance into joint title was made for estate planning purposes, to avoid probate or taxes.* In many states, this reason has been held simply insufficient, because the party actually intended to transfer legal title. The reason for that transfer is irrelevant. Indeed, at least one case has held that the desire to avoid probate is affirmative proof of donative intent. The same reasoning has been applied in those cases where the donor claims the reason for the conveyance was "convenience." In other states, however, the desire to avoid probate will rebut the presumption of a gift, because the donor has no intent to transfer a beneficial interest before death.
>
> A similar dichotomy has arisen when the reason for the conveyance into joint title is ease of obtaining financing. In some states, a bank's or other creditor's insistence that property be taken in joint title does not rebut the gift presumption, because legal title was deliberately conveyed into both parties' names. In other states, however, the courts take the position that the presumption is rebutted where title is taken jointly only to obtain financing, where the donor has no intent that the donee have a present beneficial interest.

(Emphasis added).

¶ 20 In determining whether placing an asset in joint tenancy for the purpose of avoiding estate taxes rebuts the gift presumption, the trial court must consider whether the donor had an intent to transfer a beneficial interest in the property before death.[16] The following brief explanation of

---

16. A valid inter vivos gift requires an intention on the part of the donor to make a present transfer, actual or constructive delivery of the gift to the donee, and acceptance by the donee. To find a valid gift of property, there must be a gratuitous and absolute transfer of the property from the donor to the donee, which takes effect immediately and is fully executed by delivery of the property by the donor and acceptance thereof by the donee.
38 Am.Jur.2d Gifts § 17 (citations omitted). We note one tax case which has held that a gift of an asset will be treated as a valid gift for purposes of avoiding income tax "unless there exists when the gift is made an understanding between the parties that despite the formal transfer the donor

the purpose of placing property in separate trusts for estate tax purposes is helpful to our decision:

> Because of the progressive rates, the impact of federal estate taxes on the combined estate of husband and wife must be least when their taxable estates are approximately equal.... The opportunity to split the taxable estates of husband and wife by means of the estate tax marital deduction is entirely lost if the wife, [for example,] having little or no property of her own, is the first to die. *This situation can be guarded against by gifts to the wife during her life, insuring that she can at least use most of the unified credit which will be available to her estate.*

James F. Farr & Jackson W. Wright, An Estate Planner's Handbook, § 50, at 335 (1979), quoted in *Kelln v. Kelln*, 30 Va.App. 113, 515 S.E.2d 789 (1999) (emphasis added).[17] To avoid estate taxes, then, the parties' estates needed to be nearly equal. Husband's attorneys advised him to accomplish that by giving assets, equaling the marital deduction amount, to Wife. Had one of the parties died after these conveyances but before the divorce proceedings, clearly the survivor would have claimed the gift was legitimate in order to receive the benefit of the tax planning measures. Husband cannot claim that he did not intend a gift when a gift is exactly what his tax strategy required.

¶ 21 The weight of authority from other jurisdictions supports this view. The Colorado Court of Appeals has held that placing separate property in joint tenancy for the purpose of avoiding estate taxes indicates actual intent to make a gift, rather than offering a non-gift reason to rebut the presumption of a gift. *In re Marriage of Moncrief,* 36 Colo.App. 140, 141–142, 535 P.2d 1137 (1975). The Colorado Court of Appeals has since relied on *Moncrief* to hold that a conveyance of separate property to joint tenancy for the purpose of assuring the property would pass to the spouse at the donor's death shows intent to gift, rather than a non-gift purpose which would rebut the presumption. *In re Marriage of Finer,* 920 P.2d 325 (Colo. App.1996); *In re Marriage of Meisner,* 715 P.2d 1273 (Colo.App.1985) (cert.denied).[18] In *Brown v. Brown,* 352 Pa.Super. 267, 507 A.2d 1223 (1986) (overruled on other grounds, as recognized in *Mackalica v. Mackalica,* 716

---

is to retain dominion over the property conveyed." *Wodehouse v. Comm'r of Internal Revenue,* 177 F.2d 881, 883 (2 nd Cir.1949).

**17.** In *Kelln,* the parties placed marital assets in separate revocable trusts, expressly for estate planning purposes. When they later divorced, the trial court held that the property in the separate trusts had become separate property. The Virginia Court of Appeals reversed. The court recognized that the equitable division of marital property conveyed to separate trusts for estate planning purposes was an issue of first impression. The court noted that property transferred between spouses during marriage is presumed marital, and that proof of donative intent to create separate property was required in order to find the property had become separate property. 515 S.E.2d at 792. The court recognized it had earlier held that marital property could become separate property through a valid, express agreement by the parties. *Id.,* citing *McDavid v. McDavid,* 19 Va.App. 406, 451 S.E.2d 713, 717 (1994). The court also noted that a gift from one spouse to another during marriage becomes marital property absent clear and express language that the donor spouse intended to give the donee a separate asset. *Id.* at 793. The court determined that the parties' act of placing marital property in separate trusts did not show the express intent required to change the character of the assets from marital to separate. *Id.* at 795. The court recognized that a gift may be required to equalize the estates for tax planning purposes, but that the higher level of intent required to make marital property separate property was not indicated by the evidence in that case. The court also noted numerous cases holding that the fact that the trusts were revocable indicates a lack of the donative intent required to convey marital assets to the parties' separate estates. *Id.* at 796. Similarly, the Illinois Court of Appeals has held that when marital property is conveyed to the separate name of one spouse as part of an estate tax scheme, the property remains marital. *In re Marriage of Davis,* 215 Ill.App.3d 763, 159 Ill.Dec. 375, 576 N.E.2d 44 (1991).

**18.** Similarly, in *Hippely v. Hippely,* 2002 WL 1370795 (Ohio Ct.App.2002), an unpublished opinion of the Ohio Court of Appeals, the court explained that conveying separate property to joint tenancy for the purpose of avoiding probate costs does not rebut the gift presumption, but instead shows intent to make a gift, because the probate cost savings could only be realized by giving an interest in the property to the other spouse.

A.2d 653 (Pa.Super.1998)),[19] the wife explained that she conveyed her separate home to joint tenancy with husband to avoid estate taxes, and she claimed that fact negated donative intent. The court disagreed, noting "a tax planning motive for making a gift does not negate donative intent. As the Pennsylvania Supreme Court has stated: '[the] purpose [of a] transfer ... at the least cost in inheritance taxes ... is not inconsistent with a donative intent, but rather positively suggests such an intent.'" 507 A.2d at 1225, n. 3, citing *Clay v. Keiser*, 460 Pa. 620, 626–27 n. 3, 334 A.2d 263, 266 n. 3 (1975) (abandoned on other grounds in *Butler v. Butler*, 464 Pa. 522, 347 A.2d 477 (1975)). In *McLean v. McLean*, 323 N.C. 543, 374 S.E.2d 376 (1988), the North Carolina Supreme Court affirmed the trial court's finding that husband failed to rebut presumption of a gift after he conveyed separate property to joint tenancy for federal estate tax purposes (analysis was devoted to existence of gift presumption, with only a footnoted mention of the husband's proffered reason for the conveyance). See also *Stevenson v. Stevenson*, 612 A.2d 852 (Me.1992) (affirmed finding that gift presumption was not rebutted where stated reason for conveying to joint tenancy was for estate planning purposes).

¶ 22 Conveying separate property to joint tenancy for the purpose of avoiding estate taxes is distinguishable from the purpose asserted in *Larman*, where a bank required the legal fiction of joint ownership in order to grant a mortgage. Here, the joint ownership is required by the parties themselves, because they hoped to benefit from it on their deaths. Clearly, Husband's act of conveying his separate property to joint tenancy to make the parties' estates equal was in fact a gift; there is no purpose collateral to a gift here.

¶ 23 Based on the rule announced in *Larman*, Husband's conveyance of his separate property to joint tenancy is presumed to be a gift. The trial court's finding of clear and convincing evidence of a purpose collateral to a gift is in this case against the clear weight of the evidence and we reverse that decision. For reasons explained above regarding the marital residence, we remand for the trial court to determine whether these properties remained marital after the parties conveyed them from joint tenancy into each trust, or whether that act accomplished a gift of marital property to the parties' separate estates. If the trial court determines that the properties remained marital, the trial court must equitably divide those properties pursuant to 43 O.S.2001 § 121.

II.

ISSUES RELATING TO COMMINGLING OF BANK ACCOUNTS, ALIMONY, CHILD CUSTODY, CHILD SUPPORT, CONTEMPT CITATIONS, AND ATTORNEY FEES

¶ 24 The Decree next noted that Wife claimed an interest in Keener Oil & Gas, the Pecan Farm, farm equipment, the condominium on Woodward Blvd., and the Minshall & Company Brokerage Account due to commingling of assets in bank accounts. The decree reaffirmed a prior order granting partial summary judgment in favor of Husband finding that four properties were Husband's separate property.[20] The court further held there was no commingling of marital and separate assets and that Wife brought no assets to the marriage. The court also held that "the cash/capital infusion by [Husband] of $650,000 over the course of the marriage into Keener Oil & Gas Company was from [Husband's] separate assets not marital assets. The infusion was to maintain the solvency of the company also to the benefit of [Wife]." The court held the funds in the brokerage accounts could be traced to Husband's inheritance or trust fund, or to the sales of property purchased with such funds. The trial court further listed 7 checking accounts Husband held during the marriage

---

19. *Mackalica* noted that in 1988, the Pennsylvania Court had changed the burden of proof for rebutting the gift presumption from clear and convincing evidence to a preponderance of the evidence in *Sutliff v. Sutliff*, 518 Pa. 378, 543 A.2d 534 (1988).

20. These four assets were Keener Oil and Gas Co., 380 acres in Osage County (the Pecan Farm), Lumen Energy Corporation, and Sage Properties.

and found the origin of the funds in those accounts could be traced back to Husband's inheritance or trust fund. In the Decree, the trial court further noted that the parties did not have a joint checking account. The court found that during the years Husband served on the Tulsa City Council, during which he did not receive a salary from Keener Oil & Gas, Husband used his separate trust funds to support the family. The court also noted Husband paid the household bills during the marriage. We find the trial court's findings on commingling of assets was not against the clear weight of the evidence.

¶ 25 Wife also challenges the trial court's retroactive modification of the temporary order.[21] The Decree held that Husband had overpaid support alimony and ordered Wife to reimburse Husband for half the support alimony paid under the temporary order. The temporary order was entered June 28, 2002. At trial, Husband acknowledged that the temporary order represented the agreement he and Wife made regarding the financial and custody arrangements during the pendency of the divorce proceedings. Wife asserts the document was therefore a consent decree which could not be modified without the consent of both parties. The temporary order directed Husband to pay Wife $7,500 per month for the support of Wife and the child. Husband testified that he could not afford to pay that amount, but that he signed the temporary order because he believed trial would be held six months later and he believed he would have to pay $7,500 for only a short period of time.[22] Husband testified that he had paid $7,500 per month from June 2002 until trial, which was held in January 2004. He explained his net pay was $5,600 per month, and that he used $118,000 in cash and had to borrow $151,000 to pay the support obligation included in the temporary order.

¶ 26 We find no abuse of discretion in the trial court's decision to credit Husband, as part of the property division, with $50,000 as overpayment of temporary support. The trial court retains jurisdiction to modify temporary orders until the final decree is entered. 43 O.S.2001 § 110 (D); *Gray v. Gray,* 1996 OK 84, 922 P.2d 615, 621. Additionally, although Wife correctly asserts a consent decree cannot be modified absent consent of the parties, Wife has not presented authority supporting her claim that a temporary order entered by consent cannot be modified absent both parties' consent. Lastly, in making the decree, the trial court is vested with authority to equitably divide the parties' assets. The trial court acted within its authority to award credit as part of an equitable property division after taking into consideration excessive payment of temporary support.

¶ 27 Wife's next assertion of error is that the evidence did not support an award of joint custody. We find ample evidence in the record that the child spent about equal time with each parent during the course of the divorce proceedings and that the parties were able to cooperate about matters involving the child. We therefore do not find the award of joint custody to be against the clear weight of the evidence. More importantly, however, at this time the parties' child has reached majority and this issue is now moot.

¶ 28 Wife also argues the trial court awarded an insufficient amount of child support. The trial court calculated child support based on Husband's salary of $96,000 ($8,075 monthly), and on Wife's imputed income of $1,666.66 per month. The guidelines provided for a combined monthly support amount of $1,599. Husband's portion of that amount was $1,327.17, and pursuant to the guidelines, that amount was divided in half because the child spent half his time with Wife and half his time with Husband. After re-

---

21. In the Decree, the trial court retroactively modified the July 2002 temporary order (which had provided for Husband to pay $7,500 monthly combined alimony and child support, as well as almost all of Wife's expenses). After noting that Husband had paid to Wife $274,599.62 in the two years since the temporary order was entered, the court modified the monthly combined support under the temporary order to $3,750 and

found that Husband had overpaid combined support by $50,000, which amount the court awarded to Wife as part of the property division.

22. Husband's gross monthly salary was $8,000 per month. Husband testified he had taken loans to pay the temporary support obligation.

ducing that amount by half of Wife's obligation, Husband's child support obligation under the guidelines was $527.66. The trial court deviated from the guidelines, however, and ordered Husband to pay $2,112.98 per month as child support. This amount included $1,612.98 for the child's car payment, car insurance, music lessons, private school tuition, private tutoring, school spending card, plus $500 in supplemental child support.

¶ 29 Wife argues the evidence required deviating from the guidelines. Wife argues that because Husband owns his own company, his actual salary cannot be calculated. This issue was presented to the trial court, whose findings on Husband's salary are not against the weight of the evidence. And as noted, the trial court awarded higher child support than the amount indicated by the guidelines. We find no error in the amount of child support ordered here.

■■■ ¶ 30 Wife next challenges the support alimony award as insufficient. In the decree, the court awarded Wife support alimony of $54,000, paid in monthly installments of $1,500 for 36 months. The court noted that Wife had received $180,000 in temporary support alimony. The court also found the parties would not be able to maintain their pre-divorce standard of living. The court noted Husband's income was just over $96,000 annually. The court found Wife had not proved a need for maintenance alimony, in part because of Wife's education and business prospects.

■■■ ¶ 31 In a divorce action, a trial court is vested with wide discretion in awarding support alimony, and the alimony award will not be set aside unless it is clearly against the weight of the evidence. *Peyravy v. Peyravy,* 2003 OK 92, 84 P.3d 720, 723. The appropriate factors to consider in awarding support alimony include: demonstrated need during the post-matrimonial economic readjustment period; the parties' station in life; the length of the marriage and the ages of the parties; the earning capacity of each spouse; the parties' physical condition and financial means; the mode of living to which each spouse has become accustomed during the marriage; and evidence of a spouse's own income-producing capacity and the time

necessary to make the transition for self-support. *Id.*

¶ 32 In this case, the evidence showed that Husband had paid the household expenses and had given Wife half his net pay every month during marriage. We are therefore unpersuaded by Wife's claim that she was never compensated for her service as a homemaker. Wife also had two small businesses and she was enrolled in graduate school when the marriage ended. Wife also received IRAs and other investments worth $162,750 as half the marital assets, and Wife had a separate investment account worth $56,000. While the record may have supported a higher alimony award, the amount awarded in this case does not show an abuse of discretion.

¶ 33 Wife next asserts the trial court erred in refusing to find Husband in direct contempt of court for failing to pay the full amount of support due under the temporary order, and for "barging his way into Wife's home." The evidence was disputed on whether Husband "barged into" Wife's home. And, the trial court found Husband had overpaid temporary support. Wife has not presented authority supporting this claimed error, nor have we found such authority.

¶ 34 Lastly, Wife claims the trial court abused its discretion in refusing to consider Wife's application for attorney fees. At a post-trial motion hearing, the trial court directed the parties to file applications for attorney fees within 30 days of April 22, 2004. The court ordered that the applications must be accompanied with time sheets, affidavits, and "a copy of the written settlement offer that had been generated by both parties during the course of this case." Wife filed her application for fees May 3, 2004. Wife sought just over $178,000 in fees and expenses. Wife attached billing records to her application, but she did not attach affidavits or copies of the settlement offers. Husband filed his motion to dismiss Wife's application May 12, 2004. Husband also filed his application asking that each party bear his or her own fees. The trial court entered an order striking Wife's application for materially not complying with the trial

court's direction about the requirements for applications for fees. Wife later filed a supplemental application for attorney fees, with the attachments directed by the trial court in its earlier announcement about applications for fees, June 25, 2004. That application was denied without a hearing.

¶ 35 We agree that Wife failed to comply with the trial court's order to attach time sheets, affidavits, and copies of settlement offers to her application. Wife's supplemental application was filed well beyond the thirty day time period the trial court established for applications for fees. Husband filed his motion to dismiss Wife's application for fees May 12, 2004. Wife had ten days from that date to file the proper attachments. Instead, Wife waited almost six more weeks to file a supplemental application. In her Brief in Chief, Wife simply asserts she is entitled to an award of fees. In her Reply Brief, Wife asserts that granting or denying fees may not be contingent on settling an issue, citing *Shirley v. Shirley*, 2004 OK CIV APP 100, 104 P.3d 1142. Failure to settle is not the issue here. Instead, it is failure to follow the trial court's direction, to attach settlement offers, detailed time sheets, and affidavits to the application for fees. Husband outlined the settlement offers made by both sides in his application requesting that the parties pay their own fees. And, Wife attached settlement offers to her supplemental application. Clearly, settlement offers had been made and it is unclear why Wife neglected to follow the trial court's order to attach those offers to her application. Wife did not raise *Shirley* in the trial court to justify non-compliance.[23] Wife's supplemental application was clearly filed out of time and without leave of the court. We find no abuse of discretion in the trial court's order to strike Wife's application for fees and failure to hear Wife's supplemental application.

¶ 36 As noted above, the trial court's findings that the marital home, and the other properties conveyed to joint tenancy, and then partly to Wife's trust, were Husband's separate property are against the clear weight of the evidence and we REVERSE AND REMAND that part of the decree.

The remaining provisions of the decree are not against the clear weight of the evidence and we therefore AFFIRM those provisions.

ADAMS, J., and MITCHELL, P.J., concur.

---

23. *Shirley* was decided September 17, 2004, and mandated December 21, 2004.