## CIRCUIT COURT OF FAUQUIER COUNTY

Diane Spreadbury

v.

Peter Spreadbury

February 20, 2009

Case No. CH04-125

BY JUDGE JEFFREY W. PARKER

This case comes for adjudication upon a Bill of Complaint seeking a final decree of divorce filed by Diane Spreadbury (Wife) on May 21, 2004. Peter Spreadbury (Husband) filed his Counterclaim on February 16, 2005. The Counterclaim was filed after dismissal by the Court of a Plea in Bar to jurisdiction filed by the Husband.

*Background*

Considering the procedural significance of the case in terms of the ultimate outcome of this proceeding, the Court will set this forth in some detail. The trial was first set to be held on December 21, 2007. Earlier, the Husband had initiated discovery, which the Wife had not provided. On October 26, 2007, the Husband filed a Motion to Compel Responses to Interrogatories and Production of Documents, which was granted orally, but no written order was tendered for entry at the time of the ruling. While the

Court was awaiting submission of the written order compelling discovery, on November 29, 2007, at a pretrial conference, counsel jointly represented that the entire case had been settled and could be removed from the docket of the Court. Whereupon, the case was removed.

On December 21, 2007, the Wife disavowed the settlement agreement, and the parties resumed the discovery process. The Husband filed a second Motion to Compel against the Wife on January 16, 2008, due to her continuing failure to provide responses to interrogatories and request for production of documents. While this Motion was pending, the trial was rescheduled for June 18, 2008. An Order compelling answers to interrogatories served by the Husband on the Wife was entered on April 15, 2008. A Motion seeking sanctions for the Wife's failure to comply with the Discovery Order was filed by the Husband on April 17, 2008. While this was pending, over objection of the Husband and upon Motion of the Wife, the trial was again rescheduled, this time for July 24, 2008. The Court ruled upon the previous Sanctions Motion made and decreed on May 8, 2008, in accordance with Rule 4:12(b)(2)(B) that, at trial, the Plaintiff would not be permitted to oppose the claims or defenses of the Husband, nor introduce any evidence to suggest any claims she intended to make against the Husband which were the subject of any discovery requests and not to introduce any matters into evidence which were the subject of the previous discovery requests.

On June 6, 2008, the Wife filed another Motion to reschedule the trial. Robert Shearer was substituted for Paul Morrison by Order dated April 15, 2008. This Motion was denied on July 15, 2008. On July 21, 2008, the Wife sought Chapter 11 protection in the United States Bankruptcy Court for the Eastern District of Virginia. As a result, the July trial could not proceed.

On August 21, 2008, the Bankruptcy Court entered an Order modifying the Automatic Stay and permitting trial of the domestic relations matter provided that:

> the Order of May 8, 2008, imposing discovery sanctions shall not be construed or enforced, so as to bar the debtor, in her capacity as debtor in possession, from asserting claims and defenses that a Chapter 11 trustee could assert on behalf of the bankruptcy estate, including, but not limited to, claims under 11 U.S.C., § 544(a).

Thereafter, the Wife argued the Court must now disregard its previous discovery Sanctions Order. In light of the Bankruptcy Order granting Relief from the Automatic Stay, the Domestic Relations trial was rescheduled for

February 2, 2009. The trial went forward as rescheduled at that time. Upon conclusion of all of the evidence and argument, the Court took the matter under advisement.

## Analysis

### I. *Grounds of Divorce*

Both parties, in their pleadings, sought entry of fault decrees. The evidence was insufficient to grant either party an Order upon fault grounds. However, the Court did receive sufficient evidence, properly corroborated, to demonstrate that the parties had been separated for a period in excess of one year without reconciliation or cohabitation. Additional evidence necessary for the entry of a final decree was provided. Therefore, the Court hereby authorizes the entry of a no-fault divorce decree upon the Counterclaim of the Husband pursuant to Va. Code § 20-91(A)(9).

### II. *Bankruptcy Issues*

This case presents to the Court an unique challenge. It must reconcile its earlier Sanctions Order entered against the Wife for failing to comply with discovery with the direction of the Bankruptcy Court to protect the rights of unsecured creditors of the Wife's estate.

On January 21, 2009, the Husband moved to Strike the Wife's Exhibits List as it was not in conformance with the Sanctions Order. After hearing argument shortly before trial, the Court ruled that the sweeping nature of the Bankruptcy Court Order had the effect of invalidating the Sanctions Order of this Court. However, thereafter, the Husband filed a proposed stipulation with this Court. This stipulation represented that the total sum owed the Wife's unsecured creditors did not exceed $690,939.58. This was based upon the bankruptcy schedules filed with the Court and the Husband's review of proofs of claim filed with the Bankruptcy Court. Should these sums, in fact, be significantly greater than the amounts set forth, then, of course, the argument and analysis contained herein could be subject to review.

By this stipulation, the Wife would receive this amount as a guaranteed minimum distribution in the divorce proceeding before any evidence was presented to the Court. According to the Husband, this stipulation would obviate the concerns of the Bankruptcy Court by protecting unsecured creditors while maintaining the integrity of the State Court's previous Sanctions ruling.

It is apparent that the Wife had sought to collaterally attack the Court's Sanctions Order by filing for bankruptcy. Such an attack would have been successful but for the stipulation offered by the Husband.

This Court had previously imposed the Sanctions Order due to the Wife's ongoing refusal to provide discovery. The Court of Appeals, in an unpublished opinion, *Nolting v. Nolting*, 04UNP0174044, affirmed a trial court ruling, which resulted in the entry of a very similarly worded order to the case at bar in an equitable distribution proceeding. The Court in *Nolting* stated that "Rule 4:12 governs the imposition of sanctions for failure to make discovery. . . . This Rule gives the trial court broad discretion in determining what sanctions, if any, will be imposed."

An equitable distribution proceeding is a fact and labor intensive undertaking for both counsel and court alike. It cannot be effectively completed without the cooperation of both parties to the litigation. Therefore, when one party seeks to undermine the process by not complying with recognized sanctioned discovery, the Court must take appropriate action to insure the integrity of the process. "The Court has available and should exercise adequate sanctions to deal with the reluctant or recalcitrant party or witness who fails or refuses to disclose relevant evidence." *Bowers v. Bowers*, 4 Va. App. 610, 618, 359 S.E.2d 546 (1987).

Therefore, the Court stands by its Sanctions Order of May 2008, consistent with assurances made by the Husband, that the rights of unsecured creditors of the Wife will be adequately protected herein through the Stipulation. Thus, the Court held and continues to hold that the Wife cannot present evidence in violation of the Sanctions Order and further that the Wife, as a result thereof, will be assured as a debtor in possession a minimum distribution of $690,934.58.

### III. *Jurisdiction over Assets*

Counsel for the Wife stridently and repeatedly argued that this Court was without jurisdiction to determine the ownership of the real estate and other assets held by the trustees of the various trusts previously created by the parties. The Wife argued that, as these assets were owned in trust and were further subject to ongoing out-of-state litigation, that absent other essential litigants (presumably beneficiaries of these trusts), the Court could not adjudicate these assets. As the Court ruled from the Bench and as it affirms in this letter, such argument is without merit.

The marital residence of the parties, rental properties, furniture, and valuables are held by the Trustees in a revocable *inter vivos* trust. This Trust is known as the Peter E. Spreadbury and Diane C. Spreadbury Trust-1986. It

expressly provides that, in the event Peter and Diane Spreadbury are not living together as Husband and Wife, the trustees, upon request of either party, shall pay over to them individually any portion of the trust property contributed by them to the Trust.

The fact that the parties have placed marital property into a revocable trust does not, by that act alone, remove it from the marital estate. "When evidence of intent to relinquish *all* present and future dominion over the property so as to remove it from the marital estate *is lacking*, the presumption of Va. Code § 20-107.3(A)(2), that property acquired by either spouse during a marriage is marital, is unrebutted." *Kelln v. Kelln*, 30 Va. App. 113, 124, 515 S.E.2d 789 (1999) (emphasis added).

The parties have retained the right to remove this property from the trust. This fact indicates an intention to retain dominion over that property of the parties. No pleading or decrees were presented to this Court suggesting any other jurisdiction had taken any action in reference to this property. To the contrary, the Wife continues to live in the residence and is still the owner of record. The property was acquired during the marriage and is presumed marital. Therefore, the rights of the parties in reference to the property will be adjudicated by this Court.

## IV. *Equitable Distribution*

### A. *Title*

The Parties, through the referenced Trust, have an interest in a beautiful piece of real property located at 1749 Atoka Road, Middleburg, Virginia, consisting of a 12,000 square foot stone mansion and outbuildings situated on 100 acres. The Trust also holds title to two rental houses adjacent thereto.

The main marital residence is furnished with a substantial collection of antiques, art work, and other items, which were itemized and valued in two separate binders placed into evidence, also held by the same trust. No evidence was received regarding the manner of acquisition of these individual items of tangible property. However, they were covered under a policy of hazard insurance under the name of the 1986 Spreadbury Trust, and ownership by this Trust was admitted by counsel and the parties. Two bank accounts were listed in Exhibit 1 (a demonstrative Exhibit) as being held in joint party names. Three life insurance policies were placed into irrevocable trusts (*not* the 1986 Spreadbury Trust) insuring the life of the Husband. Exhibit 1 shows a life insurance policy with a purported cash value of $109,640.00 held by the irrevocable Spreadbury Trust of 1990 as the

beneficiary. The Court has no other information about the terms of this 1990 Trust. The burden is on the parties to provide the trial court sufficient evidence to enable it to complete the equitable distribution process. *Joynes v. Payne*, 35 Va. App. 386, 410, 545 S.E.2d 561 (2001). If the Court does not receive sufficient evidence so it may make an award, it may not consider that item. *Bowers, supra*, at 620. Therefore, the life insurance trust will not be factored into the analysis.

The two remaining insurance policies were listed in Exhibits as owned by the 1994 Spreadbury Trust. Again, this Trust was not submitted into evidence. The Court has no additional information regarding this Trust. Therefore, this will not be factored into the analysis.

The remaining items of tangible property, as listed in Exhibit 1, will be incorporated by reference into this letter. The Husband's business property is Westbury Group, L.L.C., and is separate property owned by the Husband, acquired post separation. The Retirement Fund has been divided, and no further evidence was presented on this item.

## B. *Classification*

The most valuable asset of the parties by far is the land and marital residence located at 1749 Atoka Road. The Husband testified that the raw land upon which the residence was constructed was purchased in 1990 using proceeds of the sale of common stock he owned in Smith Barney. He further testified that the stock was separate property, but the proceeds were placed into a joint bank account held with the Wife. It was undisputed by the Wife that the Smith Barney stock was separate property of the Husband. However, the Husband presented no documentary evidence showing bank deposits, disbursements, settlement statement, or the deed of purchase. The only deed received into evidence was the Deed of November 19, 2003, conveying the subject property from the 1990 Spreadbury Trust to the 1986 Spreadbury Trust. This deed does recite, however, that the 1990 Spreadbury Trust took title to the land in 1990.

The main residence was constructed in 1998, and checks showing payment to the builders were included in evidence. These checks were drawn on two accounts, Innovative Management Systems and on an account in the names of Anthony T. Cope, David R. Smith, Peter E. Spreadbury, and Diane C. Spreadbury, Trustees. Testimonial evidence was also received that the parties used the sale of a residence in Greenwich, Connecticut, some of which was the Wife's separate property, to construct the Virginia residence. No documentary evidence was received concerning these transactions.

As is apparent from this recitation, the Court is again suffering from a lack of detailed information in its attempt to determine classification. When separate funds are commingled into a single account, the party "claiming a separate share must shoulder the burden of tracing." *Robbins v. Robbins*, 48 Va. App. 466, 478, 632 S.E.2d 615 (2006). Although the Husband testified and submitted some evidence to suggest a separate contribution of $1,875,666, the evidence before the Court falls short of shouldering the burden of tracing the separate property through the accounts to the assets, as required by law.

As this marital residence property is neither separate nor hybrid, the Court concludes it must be marital. It falls into that general classification contained in § 20-107.3(A)(2)(iii) "all other property acquired by each party during the marriage, which is not separate property as defined above" is marital property. This property is subject to being withdrawn from the Trust as previously discussed. There is insufficient donative intent to suggest that this property was a completed gift. "[R]etaining the right to revoke a trust is inconsistent with the notion that a grantor has relinquished all right and interest in the trust property." *Kelln, supra* at 127; *Theismann v. Theismann*, 22 Va. App. 557, 471 S.E.2d 809 (1996).

That balance of the remaining properties is also deemed marital consistent with the foregoing argument, and this has been conceded to by the parties.

## C. *Valuation*

The Husband submitted appraisal evidence regarding the value of the real properties and the value of the tangible personal properties. The real property appraisals were generally older than this Court would have preferred, but they were the only evidence presented and as a result were "the most current and accurate information *available*." *Thomas v. Thomas*, 40 Va. App. 639, 646, 580 S.E.2d 503 (2003) (emphasis added).

The values of $7,000,000 for the marital residence, $570,000 for the house at 7378 Goose Creek Rd. and $575,000 for the house at 7360 Goose Creek Rd. are hereby accepted as correct. Further, the value of the furniture totaling $311,545 is accepted in total and as set forth item by item. The remaining items, including the business property and accounts, are assigned the values set forth in the Husband's schedule of property. The furniture listed, but not valued, will not be included in the estate due to failure of proof. *Joynes v. Payne, supra*.

The Court is not, however, assigning a value claimed by the Husband for "imputed rental income" of the marital residence. The reason for the parties' separation was not provided. The Court does not know why the Husband apparently left the marital residence. The Wife has paid towards the mortgage, albeit from the support paid by the Husband to the Wife. Equity does not compel this Court to award the Husband a sum for her mere occupancy of the property. *McIlwain v. McIlwain*, 52 Va. App. 644, 666 S.E.2d 538 (2008). However, regarding the rental income from the barn and residence received during the separation, the Court finds this to be marital property. It further finds the rental amount to be a total of $415,650. The Court, however, was not satisfied with the level of proof in reference to the rental value of the horse stalls and, therefore, values this at zero. The debts will be in the amounts listed by the Husband.

D. *Factors To Be Used in the Division of Assets*

As required by Va. Code § 20-107.3(E), the Court must consider in the division or transfer of any jointly owned marital property evidence received by the Court relating to the Factors set forth in the Code Section. This Court received a minimal amount of evidence in relationship to most of these Factors. The Court will discuss only those Factors on which it received evidence. The Husband made a significant and disproportionate contribution of his assets to purchase the marital residence. He also was the sole income producer, and no evidence was submitted by the Wife regarding any monetary or non-monetary contribution on her behalf. Admittedly, this would have been difficult considering the Sanctions Order.

The parties were married on June 9, 1985. This was the second marriage for both. As a result, this marriage was of fairly long duration, although they have been separated since March of 2004. The marriage produced one child, who was a minor when this matter was instituted, but who has now attained the age of majority.

The parties are in their mid-sixties and appear to be in generally good mental and physical condition. However, the Husband testified that he is suffering from a number of physical ailments including heart problems, for which he has received surgery, and for which he takes medications. He also takes cholesterol and thyroid medications and other prescribed medications.

During the trial, there were suggestions of ongoing, extra-marital affairs by the parties; however, no definitive information was received on these issues. Further, no evidence was received regarding other circumstances or grounds leading to the divorce or separation of the parties. The only

information presented regarding the manner in which the wealth of the parties was amassed, was that the Husband was employed in a senior position at the Investment Firm of Smith Barney in New York City. It was further shown that, subsequent to his employment in New York, they decided to move to Virginia and that the Husband set up an investment business in Virginia, which has provided only a modest income recently.

### E. *Division of Jointly Held Assets*

Based upon the foregoing, the Court makes the following division.

Sixty-five percent of the equity of the marital residence and land at 1749 Atoka Road shall be paid upon sale to the Husband and the remaining thirty-five percent to the Wife.

As the Court has no evidence to suggest that the parties should receive anything other than an equal division of the remaining property, it shall be so divided. This includes half of the rental credit to the Husband identified previously. This should be factored into any future liquidation and distribution of property. The outstanding debt of the parties shall also be satisfied on an equal basis, with the exception of any secured debt on the marital residence, which shall be serviced at the same 65-35% ratio once it is transferred from the trust until it is sold and any secured debt satisfied.

This division and the time tables set forth herein shall be consistent with and subject to the Relief from Stay Order and remain subject to Bankruptcy Court review. However, it is this Court's belief that the division identified above will more than provide sufficient assets to service the debts listed in the Wife's bankruptcy schedules.

No sums will be credited to the Husband for amounts spent by the Wife from monies that were on deposit with Middleburg Bank post-separation. *Budnick v. Budnick*, 42 Va. App. 823, 595 S.E.2d 50 (2004). No other sums will be awarded the Husband for income rentals not otherwise discussed or awarded. Should, however, the Bankruptcy Court not approve any manner of distribution set forth herein or make such other ruling inconsistent with this Opinion, then this Court may be petitioned to modify its ruling consistent with the Order of the Bankruptcy Court. The Court will retain jurisdiction for this purpose; however, this Opinion should be submitted by counsel promptly to the Bankruptcy Court for approval. No distributions are to occur until this distribution schedule has been ratified by the Bankruptcy Court, other than distribution of tangible personal property to be divided between the parties by mutual agreement, if possible, within sixty days from the date of this opinion.

Failing agreement, this property will be sold at public auction after Bankruptcy Court approval and the proceeds equally divided. The parties will be free to bid at this auction, should they so desire.

It has been indicated that the Wife desires to retain the marital residence and other real properties. The Husband will be paid his interest by the Wife or by the Trust on behalf of the Wife within ninety days from the date of this approved Opinion by the Bankruptcy Court. Failing that, the Trustees shall convey the property to Julie Savage, who will be appointed Special Commissioner, upon submission of an Order endorsed by her to that effect, who after posting sufficient surety, shall sell the property as expeditiously as possible consistent with obtaining a reasonable price. All disputes on this issue may be submitted to this Court for adjudication. This includes authority to sell at public auction if listing with a realtor is not effective. The Special Commissioner shall report and account as required by law and shall pay the sums due the Wife as debtor-in-possession as long as she remains in Chapter 11.

No evidence was received regarding the need for spousal support, and none will be awarded. The Husband will be awarded $75,000.00 in attorney's fees due in large part to the dilatory and abusive procedural actions of the Wife causing unnecessary delay and expense in resolving these matters. This sum may be paid from the proceeds of sale of the real property at such time as it is sold, but, in any event, shall bear interest at 8% *per annum* if all or any part thereof is not paid within sixty days from the date of approval of this Letter.